**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAMUEL VILLEGAS LOPEZ,
     *Petitioner-Appellant,*

v.

CHARLES L. RYAN; RON CREDIO,
Warden, Arizona State Prison-
Eyman Complex,
     *Respondents-Appellees.*

No. 12-99001

D.C. No.
2:98-cv-00072-
SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted
May 14, 2012—San Francisco, California

Filed May 15, 2012

Before: Susan P. Graber, M. Margaret McKeown, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge McKeown

5317

**COUNSEL**

Kelly J. Henry, AFPD-Capital Habeas Federal Public Defender's Office, Nashville, Tennessee, for the petitioner-appellant.

Susanne Bartlett Blomo, Arizona Attorney General's Office, Phoenix, Arizona, for the respondents-appellees.

---

**OPINION**

McKEOWN, Circuit Judge:

This is the second time that Samuel Lopez seeks review in this court with respect to his petition for habeas relief in federal court. The facts and procedural history are laid out in detail in our previous decision. *Lopez v. Ryan*, 630 F.3d 1198 (9th Cir.), *cert. denied*, 132 S. Ct. 577 (2011). Since we last considered Lopez's habeas appeal, there have been several developments: (1) the Supreme Court issued its opinion in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which changed the landscape with respect to whether ineffectiveness of postconviction counsel may establish cause for procedural default; (2) Arizona issued a death warrant and set May 16, 2012, as the date for Lopez's execution; and (3) the district court denied Lopez's Federal Rule of Civil Procedure 60(b) motion seeking relief under *Martinez*. *Lopez v. Ryan*, No. CV-98-72-PHX-SMM, 2012 WL 1520172 (D. Ariz. Apr. 30, 2012) (order).

Lopez brings claims within claims and allegations of ineffective counsel at various levels of the proceedings. He asserts that his trial counsel at sentencing was ineffective and now, for the first time, that his postconviction relief ("PCR") counsel also was ineffective in his presentation of that claim. In Lopez's view, *Martinez* requires us to excuse his procedural default because of ineffective assistance of counsel ("IAC") in his state PCR proceeding and to stay his execution.

We conclude that the district court did not abuse its discretion in denying the Rule 60(b) motion. Further, *Martinez* requires Lopez to show that the defaulted claim is a substantial one. Because Lopez has not done so, we conclude, in the alternative, that he fails to meet the necessary threshold under *Martinez*. To understand our decision, it is important to outline *Martinez*, to clarify the scope of Lopez's claims in federal court, and to benchmark Lopez's claim against the evidence.

## DISCUSSION

### I.  *Martinez v. Ryan*

**[1]** *Martinez* forges a new path for habeas counsel to use ineffectiveness of state PCR counsel as a way to overcome procedural default in federal habeas proceedings. In *Martinez,* an Arizona prisoner, whose PCR counsel did not raise any IAC claim in the first collateral proceeding, argued that his PCR counsel's ineffectiveness caused his procedural default as to the sentencing level IAC claim. The Court considered "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 132 S. Ct. at 1315. Such an approach had been presumed barred by *Coleman v. Thompson*, 501 U.S. 722 (1991), which held that a PCR lawyer's negligence does not qualify as cause, because the lawyer is the prisoner's agent. *Martinez* explicitly limits the *Coleman* rule "by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315.

**[2]** Justice Kennedy, writing for the Court, explained that PCR counsel's failure to raise an IAC claim at all constituted cause for procedural default. *Id.* at 1314. The opinion laid out procedure for overcoming a default:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. . . . The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318.

## II.  Procedural Background

Lopez has argued two different trial level IAC claims. First, in his state collateral proceeding, Lopez argued that sentencing counsel was ineffective by failing to provide the psychiatric expert with certain documents from potential witnesses (the "documents claim"). Upon filing his habeas petition in federal court, Lopez expanded the ineffectiveness argument to include failure to fully investigate his family background so the expert could undertake a full assessment of his behavior and mental condition (the "family background claim"). Those two claims, albeit separate claims, were referred to as Claim 1C in Lopez's federal habeas petition.

In rejecting the initial federal habeas petition in 2008, the district court explained why the family background claim was not encompassed with the documents claim and hence was an unexhausted claim. It reasoned that Lopez's

> claim asserted in state court was a very narrow one, focused solely on counsel's failure to provide the expert with four specific documents from percipient

witnesses to support his tentative diagnosis of patho-logical intoxication. In contrast, the claim as alleged in [the district court was] counsel's failure to con-duct a comprehensive investigation of [Lopez's] background so that the expert could provide a com-plete and thorough assessment of [Lopez's] cogni-tive functioning, as well as any psychological conditions, addictive diseases, or neurological defi-cits, and any other possible influences on [Lopez's] behavior and thought processes at the time of the crime.

*Lopez v. Schriro*, No. CV-98-0072-PHX-SMM, 2008 WL 2783282, at *8 (D. Ariz. July 15, 2008) (unpublished).

On appeal, Lopez characterized Claim 1C as a single IAC claim and argued that his claim was fully exhausted. In fram-ing his argument thus, Lopez put all his eggs in one basket. The scope of his IAC claim was squarely before the district court and this court. Lopez never argued, as he could have, *any* cause for failure to exhaust, even after the district court ruled that the family background claim had been defaulted.

Nevertheless, we gave Lopez the benefit of the doubt. In reviewing his family background claim we chose not to reach the issue of procedural default, and instead resolved the claim on other grounds, albeit not on the merits. We wrote, "[e]ven assuming that the district court should not have reached the issue of procedural default, Lopez failed to present any of the evidence in support of his expanded claim in state court. Thus, he is separately barred from seeking relief under 28 U.S.C. § 2254(e)(2)." *Lopez*, 630 F.3d at 1205. We did con-sider the merits of Lopez's documents claim and determined that "Lopez has not shown a 'reasonable possibility' that, but for counsel's alleged errors, the sentencer would have con-cluded that Lopez did not deserve a death sentence." *Id.* at 1209.

After *Martinez* was decided, Lopez promptly filed a Rule 60(b) motion in district court, arguing that the ineffectiveness of his PCR counsel excuses any procedural default with respect to his family background claim. At oral argument, counsel for Lopez affirmed that there is just one claim relevant to this appeal: the family background claim.

In ruling on the 60(b) motion, the district court rejected Lopez's arguments on several grounds. The court first raised the question whether our previous decision analyzed 28 U.S.C. § 2254(e)(2) in a way that "is akin to a merits ruling" or is instead procedural. The district court considered both possibilities. The district court concluded that, if our previous ruling was on the merits, then Lopez's motion should be dismissed "because it constitutes a successive habeas petition seeking to re-raise a claim presented in a prior petition and denied on the merits." If, instead, this panel's analysis was procedural, the district court still ruled that Lopez's motion fails, because "*Martinez* does not constitute extraordinary circumstances sufficient to reopen judgment in this case." To determine whether *Martinez* constitutes the necessary extraordinary circumstance to obtain relief under Rule 60(b), the district court applied the six-factor test from *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). The district court found that only the fourth factor (lack of delay in pursuing his claim) favored Lopez and denied the motion.

### III. Application of *Martinez* to Lopez's Rule 60(b) Appeal

As the Supreme Court held, for the first time in *Martinez*, a petitioner should not be foreclosed from presenting "a potentially legitimate claim of ineffective assistance of trial counsel." 132 S. Ct. at 1315. However, this case does not present such a situation. Because *Martinez* leaves us with some leeway as to how to approach a case like Lopez's, which is intertwined with a Rule 60(b) appeal, we analyze his

appeal under two alternate approaches. Both lead to the same conclusion.

## A. *Phelps* Analysis

**[3]** Lopez argues that the newly issued *Martinez* decision constitutes extraordinary circumstances sufficient to reopen a final judgment under Rule 60(b). *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). *Phelps* sets out six factors that may be considered, among others, to evaluate whether extraordinary circumstances exist.

"Ordinarily, this analysis will be conducted by district courts in the course of reviewing Rule 60(b)(6) motions in the first instance. However, as the Supreme Court held in *Gonzalez*, 545 U.S. at 536-38, appellate courts may, in their discretion, decide the merits of a Rule 60(b) motion in the first instance on appeal." *Phelps*, 569 F.3d at 1134-35. We follow the approach taken in both *Gonzalez* and *Phelps*, and we conduct our own, independent Rule 60(b) analysis. Because we conclude—under our own analysis—that Lopez has not met the showing of "extraordinary circumstances" justifying reopening, we need not parse the district court's analysis. However, the bottom line result is the same—denial of the Rule 60(b) relief—even under an abuse of discretion review. *See Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007) (holding that we review the district court's Rule 60(b) analysis for abuse of discretion).

1. The first factor considers the nature of the intervening change in the law. *Phelps*, 569 F.3d at 1135. In *Gonzalez*, 545 U.S. at 536, the Eleventh Circuit had applied its settled law on the interpretation of 28 U.S.C. § 2244(d)(2) to bar the petitioner's claim on statute-of-limitations grounds. But other circuits had disagreed with the Eleventh Circuit's "unduly parsimonious interpretation of § 2244(d)(2)." *Id.* In that light,

the Court held that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court" rejected the Eleventh Circuit's interpretation. *Id.* The Court thus held that this factor weighed strongly against a finding of extraordinary circumstances. *Id.*; *see also Phelps*, 569 F.3d at 1136 (holding that this factor weighs in favor of the petitioner where the issue was unresolved during the federal habeas proceedings).

The nature of the intervening change of law at issue here differs from the situations at issue in *Gonzalez* and *Phelps*. Here, it was settled law that post-conviction counsel's effectiveness was irrelevant to establishing cause for procedural default. *Coleman v. Thompson*, 501 U.S. 722 (1991). In *Martinez*, 132 S. Ct. at 1315, however, the Supreme Court "qualifie[d] *Coleman* by recognizing a narrow exception." In our view, these circumstances weigh slightly in favor of reopening Lopez's habeas case. Unlike the "hardly extraordinary" development of the Supreme Court resolving an existing circuit split, *Gonzalez*, 545 U.S. at 536, the Supreme Court's development in *Martinez* constitutes a remarkable—if "limited," *Martinez*, 132 S. Ct. at 1319—development in the Court's equitable jurisprudence.

2.   The second factor considers the petitioner's exercise of diligence in pursuing the issue during the federal habeas proceedings. *Phelps*, 569 F.3d at 1136. Here, we must consider Lopez's diligence in pursuing his current theory that his PCR counsel's performance provided cause for Lopez's failure to develop, before the state courts, the factual record concerning his trial counsel's ineffectiveness. This factor weighs against reopening Lopez's habeas case.

Until the Supreme Court decided *Martinez*, after Lopez's federal proceedings had become final, Lopez had never pursued the theory that he now advances. In fact, his theory during his federal proceedings was that his PCR counsel had been *diligent* in developing his IAC claim. That theory is

obviously contrary to the position that he takes now. Lopez did not raise this issue in his petition for certiorari, resting instead on his theory that the State purportedly "waived" all procedural bars. In other words, when given a chance to make his best arguments before the Supreme Court—which has the authority to overturn its precedents—Lopez pointed to *the State's* conduct, not alleged ineffectiveness of his PCR counsel. In this same time frame, of course, other petitioners, like Martinez, were challenging *Coleman*.[1]

3.   The third factor relates to the interest in finality. *Id.* at 1137. The State's and the victim's interests in finality, especially after a warrant of execution has been obtained and an execution date set, weigh against granting post-judgment relief. This factor does not support reopening Lopez's habeas case.

4.   The fourth factor concerns "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Id.* at 1138. We agree with the district court that the relatively short time period between the finality of Lopez's federal habeas proceedings and his Rule 60(b) motion weighs in favor of reopening Lopez's habeas case.

5.   The fifth consideration pertains to the degree of connection between Lopez's case and *Martinez. Id.* at 1138-39. In *Phelps*, "the intervening change in the law directly overruled the decision for which reconsideration [had been] sought." *Id.* at 1139. We held that that fact supported reconsideration. *Id.*

---

[1]We make clear that we do not fault Lopez for failing to raise his PCR counsel's ineffectiveness before the district court or before us in his original federal habeas proceedings. We agree with Lopez that imposing such a penalty would have the perverse effect of encouraging federal habeas lawyers to raise every conceivable (and not so conceivable) challenge— even those challenges squarely foreclosed by binding circuit and Supreme Court precedent. We do not believe that *Gonzalez* intended such an effect.

Here, however, the connection between the intervening change of law and Lopez's case is not as straightforward. On its face, *Martinez* permits the federal courts to excuse a petitioner's *procedural default*, if the petitioner's PCR counsel provided ineffective assistance concerning a certain narrow category of claims. In Lopez's case, however, we did not rest our decision on procedural default. Instead, we assumed that Lopez could overcome the "procedural default" bar, and we held that, even so, Lopez's claim failed for an entirely separate reason—his failure to develop the factual basis of his claim pursuant to 28 U.S.C. § 2254(e)(2).

Lopez argues that it is but a small expansion of *Martinez* to hold that the "narrow exception" in *Martinez* necessarily applies not only to PCR counsel's ineffective failure to raise a claim (the subject of procedural default) but also to PCR counsel's ineffective failure to develop the factual basis of a claim (the subject of § 2254(e)(2)). We need not decide whether Lopez is correct, though we do note tension between his theory and the Supreme Court's jurisprudence in this area, *see, e.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). For present purposes, it suffices to note that the connection between Lopez's current theory and the intervening change in law does not present the sort of identity that we addressed in *Phelps*. Given the difference between procedural default and § 2254(e)(2), and the potentially significant legal difference between those doctrines, this factor does not weigh in favor of reopening Lopez's case.

6.  The final factor concerns comity. In light of our previous opinion and those of the various other courts that have addressed the merits of several of Lopez's claims, and the determination regarding Lopez's lack of diligence, the comity factor does not favor reconsideration.

**[4]** In sum, the equitable factors described above provide little overall support for reopening Lopez's case. We recognize that one could weigh the six factors differently and, in

some ways, the equitable considerations in this case are close. In the final analysis, however, as discussed below, Lopez's underlying claim does not present a compelling reason to reopen the case, because that claim is not a substantial one. In that light, and in considering the six factors discussed above, we decline to reopen Lopez's habeas case.

## B. Substantiality of Underlying Claim

**[5]** The parties take different views as to the scope of *Martinez*. We need not decide whether *Martinez* is limited to procedural default or also applies to other circumstances such as those presented here. At oral argument, counsel for both sides agreed that, assuming the applicability of *Martinez*, it is appropriate for this court to conduct a prejudice analysis. Thus, in the alternative, we consider whether, even if Lopez could pass the procedural hurdles, he can succeed under *Martinez*.

**[6]** According to *Martinez*, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 132 S. Ct. at 1318. Thus, *Martinez* requires that a petitioner's claim of cause for a procedural default be rooted in "a potentially legitimate claim of ineffective assistance of trial counsel." *Id.* at 1315. At bottom, Lopez argues that, had counsel provided his psychiatric expert "with a broad range of biographical data and family and social history that were necessary for a proper diagnosis," *Lopez*, 630 F.3d at 1204, it would have given the doctor the basis to provide a more definitive opinion on Lopez's cognitive functioning, and presumably would have changed the outcome of his sentencing. This double layer of hypothetical speculation is more than a stretch and offers no reasonable probability that this evidence would change the resulting sentence. Along with his habeas petition, Lopez provided substantial evidence

regarding his background and its claimed impact on his diagnosis. That evidence was before this court in the first appeal.

**[7]** The nature of Lopez's crime was so heinous that, even accepting his claims about his chaotic and violent childhood, we cannot characterize his background claim as substantial. In fact the claim was a very narrow one and related only to supplemental evidence with respect to his psychiatrist. Even now, as reaffirmed by counsel at oral argument, Lopez does not assert a broad-ranging claim of IAC for failure to investigate his background and present his circumstances to the sentencing judge. Rather, his claim is confined to claimed deficiencies in providing further information to his expert. Viewed in the way he frames it, the claim cannot be considered substantial, nor does the record support any suggestion of prejudice.

Just this week our circuit interpreted *Martinez* and held that a petitioner "is entitled to a remand if he can show that PCR counsel was ineffective under *Strickland* for not raising a claim of ineffective assistance of trial counsel, and also 'that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one.' " *Sexton v. Cozner*, No. 10-35055, ___ F.3d ___, op. at 5273 (9th Cir. May 14, 2012) (quoting *Martinez*, 132 S. Ct. at 1318). To have a legitimate IAC claim a petitioner must be able to establish both deficient representation *and* prejudice. *Strickland*, 466 U.S. at 687. The court in *Sexton* provides an analysis under *Strickland*. Similar analysis here does not favor Lopez. "To establish that PCR counsel was ineffective, [Lopez] must show that trial counsel was likewise ineffective . . . ." *Sexton*, op at 5277.

On appeal from denial of his habeas petition, Lopez dedicated much of his opening brief to detailing his chaotic, violent family background and debilitating substance abuse problems. But as we pointed out, "Lopez argues that the new evidence at issue merely 'supplement[s] the facts supporting the claim [he] made in state court,' " *Lopez*, 630 F.3d at 1206 n.8 (alteration in original).

**[8]** The record is full of evidence of the depravity and brutal nature of the crime.

> The evidence at trial shows that there was a tremendous struggle inside the victim's residence. Blood spatter was located on the floor in the kitchen, living room and the bathroom. Blood spatter was also observed on the walls in the kitchen and the bathroom. . . . [A]t one point during the struggle the victim was at least erect bleeding on to the floor, standing erect bleeding on to the floor. Undoubtedly she was either fighting the defendant and/or begging for her life. . . . When [the victim's] body was discovered on the morning of the 29th, she was nude from the waist down. The defendant had taken her pajama bottoms, tied them snugly around her eyes. A white lace scarf had been crammed tightly into her mouth. . . . [She] had approximately 23 stab wounds in the left breast and upper chest area. Many of these wounds would have by themselves been potentially fatal. Her throat was cut.

*Lopez*, 2008 WL 2783282, at *23.

**[9]** The horrific crime is described in greater detail than need be repeated here. The sentencing judge put it cogently: "I've been practicing law since 1957. I've prosecuted first degree murder cases. I defended first degree murder cases. In the last eight years or so I've been on the criminal bench approximately five years. Of that time I've presided over numerous first degree murder cases. I have never seen one as bad as this one." We recognize that the IAC standard is an objective one, but in assessing whether there would be prejudice, we take into account the reasons for imposing the death penalty. Even accepting and reviewing de novo Lopez's late-

offered evidence at the first habeas proceeding, Lopez fails to meet the *Martinez* test of substantiality as to prejudice.[2]

**AFFIRMED.**

[2]The parties also briefed two related procedural arguments which were not independently certified: (1) whether Lopez's motion is in substance a second or successive petition; and (2) whether the petition can be treated as a first in time petition. In light of our analysis, we need not reach these issues, and we agree with the district court that no certificate of appealability should have issued.