**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2982
_____

JERMONT COX,
                              Appellant

v.

MARTIN HORN; CONNOR BLAINE;
THE DISTRICT ATTORNEY
OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL
OF THE STATE OF PENNSYLVANIA
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-00-cv-05188)
District Judge:  Honorable Anita B. Brody
_____

Argued:  June 12, 2014
_____

Before:  AMBRO and BARRY, <u>Circuit Judges</u>, and
RESTANI,[*] <u>Judge</u>

(Opinion Filed: August 7, 2014)
_____

Stuart B. Lev, Esq. (Argued)
Federal Community Defender Office for the Eastern District
of Pennsylvania

_____

[*] Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

Capital Habeas Unit
601 Walnut Street
The Curtis Center, Suite 545 West
Philadelphia, PA 19106

Counsel for Appellant

Molly S. Lorber, Esq. (Argued)
Thomas W. Dolgenos, Esq.
Helen Kane, Esq.
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

Counsel for Appellees

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

More than twenty years ago, Jermont Cox was convicted in the Court of Common Pleas of Philadelphia County of first-degree murder and related charges. In 2000, he filed a petition in the U.S. District Court for a writ of habeas corpus. The District Court dismissed the petition in 2004, finding that all but one of Cox's claims were procedurally defaulted due to counsel's failure to pursue them in Cox's initial-review post-conviction proceeding in state court and that the one preserved claim lacked merit. We affirmed. In 2012, the Supreme Court of the United States decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which announced an exception to longstanding precedent and found that, under certain circumstances, and for purposes of habeas review, post-conviction counsel's failure to raise ineffective assistance of trial counsel claims could excuse a procedural default of those claims. Within three months of that decision, Cox filed a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure for relief from the 2004 order dismissing his habeas petition. The District Court denied the motion, finding that the intervening change in law occasioned by

*Martinez,* "without more," did not provide cause for relief.

We agree that, for relief to be granted under Rule 60(b)(6), "more" than the concededly important change of law wrought by *Martinez* is required—indeed, much "more" is required. Ultimately, as with any motion for 60(b)(6) relief, what must be shown are "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993); *accord Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008). But what those extraordinary circumstances would—or could—be in the context of *Martinez* was neither offered to the District Court by the parties nor discussed by the Court, although, to be sure, at that point there had been little post-*Martinez* case law to inform any such discussion.

We will vacate the order of the District Court and remand to provide the Court the opportunity to consider Cox's Rule 60(b)(6) motion with the benefit of whatever guidance it may glean from this Opinion and from any additional briefing it may order. We note at the outset that one of the critical factors in the equitable and case-dependent nature of the 60(b)(6) analysis on which we now embark is whether the 60(b)(6) motion under review was brought within a reasonable time of the *Martinez* decision. *See* Fed. R. Civ. P. 60(c)(1). It is not disputed that the timing of the 60(b)(6) motion before us—filed, as it was, roughly ninety days after *Martinez*—is close enough to that decision to be deemed reasonable. Still, though not an issue before us, it is important that we acknowledge—and, indeed, we warn—that, unless a petitioner's motion for 60(b)(6) relief based on *Martinez* was brought within a reasonable time of that decision, the motion will fail.

I. *PROCEDURAL HISTORY*

Recognizing that more than twenty years of procedural history has brought us to this point, it is, nonetheless, important that that history be recounted. We will attempt to be succinct, if not laserlike, in our recitation.

On October 28, 1993, following a bench trial before

3

the Hon. Carolyn Engel Temin of the Court of Common Pleas of Philadelphia County, Cox was convicted of first-degree murder, criminal conspiracy, and possession of an instrument of crime in connection with the July 19, 1992 shooting death of Lawrence Davis, and was sentenced to life imprisonment.

In a statement he gave to the police at the time of his arrest, Cox confessed to shooting Davis, but said that the shooting had been accidental. He and a friend, Larry Lee, he said, had gone to a drug house operated by Lee. While they were outside drinking, Lee got into a dispute with Davis that escalated into a physical altercation. At some point, Lee handed Cox a gun that was already cocked. Cox shot twice, hitting Davis, and then handed the gun back to Lee. According to Cox, he later told family members that the shooting had been an accident.

To prove at trial that Cox had the requisite intent for first-degree murder, the Commonwealth presented the testimony of Kimberly Little, an eyewitness. Little testified that Cox and Lee worked for a drug organization that was run out of an apartment in her building: Cox was a "lookout" and Lee supplied the operation's drugs. (A. 31.) On the night of Davis' death, Little saw from her window an argument erupt between Davis and Lee. According to Little, Cox then exited a local bar with a six-pack of beer, approached the two men, placed the six-pack on the hood of Lee's nearby car, retrieved a gun from the car, walked to within four feet of Davis, and shot him three times. Cox stopped to drink a beer, and he and Lee left in Lee's car.

The Commonwealth's other witnesses were Kimberly Little's sister, Mary Little; the medical examiner; and a ballistics expert. Mary Little confirmed that Cox and Lee were neighborhood drug dealers and that she saw them drive off together after the shooting. The medical examiner asserted that Davis had four wounds caused by at least three bullets, and the ballistics expert explained that it was unlikely the shooting was accidental given the number of shots fired.

Trial counsel filed post-verdict motions on Cox's behalf. Cox also filed a motion pro se alleging trial counsel's

4

ineffectiveness and requesting the appointment of new counsel. In February of 1994, Judge Temin held a hearing on the post-verdict motions. At the hearing, Cox testified in support of his pro se motion and outlined trial counsel's alleged failings: trial counsel (1) failed to present testimony from various character witnesses; (2) failed to find a witness, identified by Cox, who would have testified that "guys from the neighborhood" forced Kimberly Little to give a false statement to the police, (S.A. 47); (3) failed to review paperwork that Cox provided him; and (4) dissuaded Cox from taking the stand in his own defense. In response, trial counsel stated that he found himself in "a very untenable position" and asked that he be permitted to withdraw. (S.A. 59.) Judge Temin denied the request as well as the pro se motion, finding Cox's claims of ineffectiveness to lack merit. She later denied the counseled post-verdict motions.

Cox, still represented by trial counsel, appealed his conviction, challenging the sufficiency of the evidence and the admission of evidence relating to uncharged drug activity. In June of 1995, the Pennsylvania Superior Court affirmed the judgment of sentence. Cox then filed a pro se petition for allocatur in the Pennsylvania Supreme Court, raising claims of trial counsel's ineffective assistance at the trial and on appeal. New counsel was appointed for Cox and submitted a supplemental allocatur petition. The Supreme Court denied allocatur in April of 1996.[1]

---

[1] By that time, Cox had also been convicted of the 1992 first-degree murders of Roosevelt Watson and Terence Stewart, both of whom he aided Lee in killing. Cox was sentenced to life imprisonment for the murder of Watson and death for the murder of Stewart. His conviction for murdering Davis was found to be an aggravating factor in support of his capital sentence. *See Commonwealth v. Cox*, 983 A.2d 666, 673-75 (Pa. 2009). Those convictions have spawned federal habeas proceedings that are before the District Court, and Cox has filed new PCRA petitions challenging his convictions on all three murders on the basis of new ballistics evidence. His habeas petitions relating to the Watson and Stewart cases have been stayed pending those PCRA proceedings.

The following month, Cox filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546. The attorney who had represented Cox in his petition to the Pennsylvania Supreme Court was again appointed to represent Cox in his collateral review proceeding under PCRA. Counsel filed an amended PCRA petition asserting claims of ineffective assistance of trial counsel.[2] Judge Temin, sitting as the PCRA court, held a hearing at which PCRA counsel chose to proceed on only one of the multiple claims of trial counsel's ineffectiveness: failure to impeach the Littles with their criminal records and motive to curry favor with the Commonwealth to gain leniency in their own cases.

On August 28, 1998, Judge Temin denied post-conviction relief, finding that Cox had not been prejudiced by trial counsel's failure to impeach Kimberly and Mary Little with their criminal records because evidence aside from their testimony established his guilt. The Superior Court affirmed in July of 1999 and the Supreme Court denied allocatur in December of that year. Cox filed a second PCRA petition pro se, alleging ineffective assistance claims against trial and PCRA counsel. Judge Temin dismissed the petition as untimely, and the Superior Court affirmed after Cox failed to file a brief.

In October of 2000, Cox, now represented by the Federal Defender, filed a petition for a writ of habeas corpus in the U.S. District Court. The petition raised eight grounds for relief: (1) six claims of ineffective assistance of trial

---

[2] The counseled PCRA petition claimed that trial counsel had provided constitutionally deficient representation when he failed to impeach the Little sisters with (1) the fact that they had charges pending against them when they first gave statements to the police, were eventually convicted of lesser charges, and were on probation at the time of trial; (2) their alleged familial relationship to the murder victim, Davis; and (3) a prior inconsistent statement by Kimberly Little. Trial counsel was also allegedly deficient for failing to present evidence of Cox's lawful employment.

6

counsel; (2) one violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) a claim of cumulative error. In July of 2003, a magistrate judge issued a report and recommendation ("R&R") in which he determined that the ineffective assistance claims abandoned by PCRA counsel before the PCRA court, as well as the *Brady* and cumulative error claims, were procedurally defaulted. He reviewed the remaining claim of ineffective assistance—trial counsel's failure to impeach the Littles with their criminal records—and concluded that the Superior Court's decision rejecting that claim was neither "contrary to" nor an "unreasonable application" of established federal law. (A. 44-47 (quoting 28 U.S.C. § 2254(d)(1)).) Cox filed objections to the R&R, arguing that PCRA counsel's unilateral decision to abandon claims constituted cause to overcome the procedural default bar. In August of 2004, the District Court rejected Cox's objections, adopted the R&R, and dismissed the habeas petition.[3] We affirmed on appeal. *Cox v. Horn*, 174 F. App'x 84 (3d Cir. 2006).

Six years later, on June 20, 2012, Cox filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) seeking relief from the District Court's order of dismissal due to the intervening change in procedural law occasioned by the March 20, 2012 decision of the Supreme Court of the United States in *Martinez v. Ryan*. The Court held in *Martinez* that, under certain circumstances, error by post-conviction counsel can constitute cause to overcome the procedural default of

---

[3] The District Court granted a certificate of appealability on two issues: (1) whether the Superior Court's resolution of Cox's ineffective assistance of counsel claim, based on trial counsel's failure to impeach Kimberly Little with evidence of her criminal record, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" and (2) "whether the Superior Court's failure to remand to the trial court to conduct a hearing to determine whether [Cox] wanted to proceed pro se or with counsel establishe[d] cause to overcome a procedural default" of his other claims. *Cox v. Horn*, No. 00-5188 (E.D. Pa. Aug. 11, 2004) (order granting certificate of appealability).

claims alleging trial counsel's ineffective assistance. Cox argued that it was only due to PCRA counsel's ineffective assistance at the initial PCRA proceeding that his claims of ineffectiveness against trial counsel had been abandoned and were now procedurally defaulted.

On May 23, 2013, the District Court denied Cox's motion, finding that "*Martinez*'s change of law, without more," was not cause for relief. (A. 5.) In a separate July 2, 2013 order, the District Court issued a certificate of appealability on the "legal question" of "whether the change in law resulting from *Martinez* constitutes extraordinary circumstances that would warrant relief" under Rule 60(b)(6). (A. 6.)

## II.     *JURISDICTION AND STANDARD OF REVIEW*

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

We review for abuse of discretion a district court's denial of a motion under Rule 60(b)(6). *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 342 (3d Cir. 2003). A district court abuses its discretion when it bases its decision upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact. *Morris v. Horn*, 187 F.3d 333, 341 (3d Cir. 1999).

## III.     *ANALYSIS*

### A.     The *Martinez* Rule

When reviewing a state prisoner's petition for a writ of habeas corpus, a federal court normally cannot review a federal claim for post-conviction relief that has already been rejected by a state court on the basis of an independent and adequate state procedural rule. *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner may obtain federal review of a procedurally defaulted claim, however, if he demonstrates cause for the default and prejudice arising from the violation

of federal law. *Martinez*, 132 S. Ct. at 1316 (citing *Coleman*, 501 U.S. at 750).

When Cox's habeas petition was initially under review by the District Court, the governing rule, as recognized in *Coleman*, was that error by counsel in state post-conviction proceedings could not serve as "cause" sufficient to excuse procedural default of a petitioner's claim. *See Coleman*, 501 U.S. at 752-54; *Sweger v. Chesney*, 294 F.3d 506, 522 & n.16 (3d Cir. 2002). The Supreme Court carved out a significant exception to that rule nearly eight years after Cox's petition was denied when, in 2012, it decided *Martinez*.

In *Martinez*, the Supreme Court held that, where state law requires a prisoner to raise claims of ineffective assistance of trial counsel in a collateral proceeding, rather than on direct review, a procedural default of those claims will not bar their review by a federal habeas court if three conditions are met: (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is "substantial," meaning "the claim has some merit," analogous to the substantiality requirement for a certificate of appealability. *Martinez*, 132 S. Ct. at 1318-20. The Court adopted this "equitable ruling" for several reasons. *Id.* at 1319. First, "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system" vital to ensuring the fairness of an adversarial trial. *Id.* at 1317. Second, a prisoner cannot realistically vindicate that right through a claim of ineffective assistance of trial counsel without "an effective attorney" to aid in the investigation and presentation of the claim. *Id.* Finally, if the lack of effective counsel in an initial-review collateral proceeding could not excuse the federal procedural default bar, no court—state or federal—would ever review the defendant's ineffective assistance claims, given that they were first brought in that collateral proceeding. *Id.* at 1316.

The majority in *Martinez* noted that it was propounding a "narrow," *id.* at 1315, "limited qualification"

9

to *Coleman*, *id.* at 1319. Even so, what the Court did was significant. *See, e.g.*, *id.* at 1327 (Scalia, J., dissenting) (criticizing *Martinez* as "a radical alteration of . . . habeas jurisprudence"); *Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012) ("*Martinez* constitutes a remarkable—if 'limited,'— development in the Court's equitable jurisprudence." (citation omitted)).

In *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), issued the following Term, the Supreme Court clarified that the *Martinez* rule applied not only to states that expressly denied permission to raise ineffective assistance claims on direct appeal (such as Arizona, which *Martinez* addressed), but also to states in which it was "virtually impossible," as a practical matter, to assert an ineffective assistance claim before collateral review. *Id.* at 1915 (quotation marks omitted). Texas law, at issue in *Trevino*, ostensibly permitted (though it did not require) criminal defendants to raise ineffective assistance of trial counsel claims on direct appeal. In practice, however, Texas' criminal justice system "[did] not offer most defendants a meaningful opportunity" to do so. *Id.* at 1921. As the Texas courts themselves had observed, trial records often lacked information necessary to substantiate ineffective assistance of trial counsel claims, and motion filing deadlines, coupled with the lack of readily available transcripts, generally precluded raising an ineffective assistance claim in a post-trial motion. Moreover, the Texas courts had invited, and even directed, defendants to wait to pursue such claims until collateral review. The Court "conclude[d] that where, as [in Texas], state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, [the] holding in *Martinez* applies." *Id.*

### B.     Cox's Rule 60(b)(6) Motion

Rule 60(b)(6) is a catch-all provision that authorizes a court to grant relief from a final judgment for "any . . . reason" other than those listed elsewhere in the Rule. Fed. R. Civ. P. 60(b)(6). As we noted at the outset, courts are to

10

dispense their broad powers under 60(b)(6) only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka*, 989 F.2d at 140.

Ninety-two days after the Supreme Court issued its decision in *Martinez*, Cox filed a motion under Rule 60(b)(6), seeking to reopen his federal habeas proceeding based on the "significant change in procedural law" caused by the decision. (A. 74.) In ruling on Cox's motion, the District Court noted that neither the Supreme Court nor our Court had decided whether the rule announced in *Martinez* constituted an "extraordinary circumstance" sufficient in and of itself to support a 60(b)(6) motion and observed a divide among the courts of appeals that had addressed the issue. The Court explained that the Fifth Circuit, in *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012), held that "a change in law, including the change announced in *Martinez*, can never be the basis of 60(b) relief." (A. 4.) In contrast, it said, the Ninth Circuit had left open the possibility that *Martinez*, assessed together with other factors on a case-by-case basis, could justify 60(b) relief. (A. 4 (citing *Lopez*, 678 F.3d 1131).)[4] Joining what it viewed to be the position of every other district court in our Circuit to have opined on the impact of *Martinez*, the Court "adopt[ed] the reasoning of the Fifth Circuit to hold that *Martinez*'s change of law, without more, [was] insufficient to warrant relief under 60(b)(6)." (A. 4-5.)

Although we agree with the District Court's ultimate conclusion that *Martinez*, without more, is an insufficient basis for reopening a long-since-dismissed habeas petition, such as Cox's, we cannot endorse the path it took to arrive at that conclusion. For one thing, *Adams* is not concordant with our precedent applying Rule 60(b)(6). For another, we cannot determine from what it wrote whether the Court considered factors—if any there be—beyond *Martinez*'s jurisprudential change in assessing Cox's request for relief. To the extent the Court "adopt[ed] the reasoning" of *Adams* and there stopped its inquiry, it did not employ the full, case-specific analysis

---

[4] In *Lopez*, the Ninth Circuit also denied Rule 60(b)(6) relief. 678 F.3d at 1137.

11

we require when faced with a 60(b)(6) motion, although, as we have already noted, little was offered by the parties in that regard.

      1.      Whether *Martinez* Is Itself an Extraordinary Circumstance

Because it was a focal point of the District Court's reasoning, we begin with a discussion of the Fifth Circuit's decision in *Adams v. Thaler*. In *Adams*, as in this case, the district court dismissed a habeas petitioner's ineffective assistance of counsel claims as procedurally defaulted under state law, finding that errors by state post-conviction counsel could not excuse the default. Following the Supreme Court's decision in *Martinez*, the petitioner, who had been sentenced to death in Texas state court, filed a Rule 60(b)(6) motion seeking relief from the order dismissing his habeas petition. The petitioner pointed to several factors that, in combination, established "extraordinary circumstances" and entitled him to 60(b)(6) relief: (1) the "'jurisprudential sea change' in federal habeas corpus law" occasioned by *Martinez*; (2) the fact that his case had resulted in a death sentence; and (3) "the equitable imperative that the true merit" of his claims be heard. *Adams*, 679 F.3d at 319. He also filed a motion for a stay of execution pending the district court's resolution of his 60(b)(6) motion. The district court granted the stay of execution.

The Fifth Circuit vacated that order as an abuse of the district court's discretion, given that the petitioner had not shown a likelihood of success on his Rule 60(b)(6) motion. The court determined that the 60(b)(6) motion would not succeed because, under Fifth Circuit precedent, "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Id.* (alteration in original) (internal quotation marks omitted). That proposition flowed from prior Fifth Circuit cases, which stated that "changes in decisional law . . . do not constitute the 'extraordinary circumstances' required for granting Rule 60(b)(6) relief." *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002); *accord Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011) (per curiam).

Concluding that *Martinez* was "simply a change in decisional law" and its development of procedural default principles was "hardly extraordinary," the *Adams* court denied 60(b)(6) relief without examining any of the petitioner's individual circumstances. *Adams*, 679 F.3d at 320 (internal quotation marks omitted).

*Adams* does not square with our approach to Rule 60(b)(6).

As an initial matter, we have not embraced any categorical rule that a change in decisional law is never an adequate basis for Rule 60(b)(6) relief. Rather, we have consistently articulated a more qualified position: that intervening changes in the law *rarely* justify relief from final judgments under 60(b)(6). *See, e.g.*, *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999) (en banc) ("'[I]ntervening developments in the law by themselves *rarely* constitute the extraordinary circumstances required for relief under Rule 60(b)(6).'" (quoting *Agostini v. Felton*, 521 U.S. 203, 239 (1997)) (emphasis added)); *Morris*, 187 F.3d at 341 (same). Stated somewhat differently, we have not foreclosed the possibility that a change in controlling precedent, even standing alone, might give reason for 60(b)(6) relief. *See Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir. 1982) (per curiam) ("A decision of the Supreme Court of the United States or a Court of Appeals may provide the extraordinary circumstances for granting a Rule 60(b)(6) motion . . . .").

Even if there is not much daylight between the "never" position of the Fifth Circuit and the "rarely" position that we have staked out, *Adams* differs from our precedent in yet another significant respect: its failure to consider the full set of facts and circumstances attendant to the Rule 60(b)(6) motion under review. The Fifth Circuit in *Adams* ended its analysis after determining that *Martinez*'s change in the law was an insufficient basis for 60(b)(6) relief and did not consider whether the capital nature of the petitioner's case or any other factor might counsel that *Martinez* be accorded heightened significance in his case or provide a reason or reasons for granting 60(b)(6) relief. Indeed, the court did not

13

address in any meaningful way the petitioner's claim that he was not offering *Martinez* "alone" as a basis for relief. In *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013), the Fifth Circuit later acknowledged that *Adams* and its other precedent had not cited additional equitable factors "as bearing on the analysis of extraordinary circumstances under Rule 60(b)(6)."[5] *See also id.* at 376 n.1. The fact that the petitioner's 60(b)(6) motion was predicated chiefly on a post-judgment change in the law was the singular, dispositive issue for the *Adams* court.

We have not taken that route. Instead, we have long employed a flexible, multifactor approach to Rule 60(b)(6) motions, including those built upon a post-judgment change in the law, that takes into account all the particulars of a movant's case. *See Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) (noting, in the context of a 60(b)(6) analysis, the propriety of "explicit[ly]" considering "equitable factors" in addition to a change in law); *Lasky v. Cont'l Prods. Corp.*, 804 F.2d 250, 256 (3d Cir. 1986) (citing multiple factors a district court may consider in assessing a motion under 60(b)(6)).[6] The fundamental point of 60(b) is that it provides "a grand reservoir of equitable power to do justice in a particular case." *Hall v. Cmty. Mental Health Ctr.*, 772 F.2d 42, 46 (3d Cir. 1985) (internal quotation marks omitted). A movant, of course, bears the burden of establishing entitlement to such equitable relief, which, again, will be granted only under extraordinary circumstances. *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977). But a district court must consider the full measure of any properly presented facts and circumstances attendant to the movant's request.

---

[5] The court in *Diaz* assumed, for the sake of argument, that a district court may consider several equitable factors in the Rule 60(b)(6) context, but found that consideration of those factors in Diaz's case did not entitle him to 60(b)(6) relief. 731 F.3d at 377-78.

[6] Notably, the factors outlined in *Lasky* parallel the equitable factors cited by the Fifth Circuit in *Diaz* as being of questionable relevance to Rule 60(b)(6) motions.

The Commonwealth appellees contend that *Gonzalez v. Crosby*, 545 U.S. 524 (2005), effectively displaced our flexible approach in the habeas context and precludes Rule 60(b)(6) relief based on a change in law, including *Martinez*. In *Gonzalez*, the district court dismissed a petitioner's habeas petition as barred by the statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). It found that the limitations period was not tolled while his second state post-conviction motion was pending because the motion was untimely and successive and, therefore, had not been "properly filed." *Id.* at 527. The Eleventh Circuit denied a certificate of appealability and the petitioner did not seek subsequent review of that decision. Several months later, the Supreme Court rejected the district court's reasoning in *Artuz v. Bennett*, 531 U.S. 4 (2000), and held that an application for state post-conviction relief can be "properly filed" even if it was dismissed by the state as procedurally barred. The petitioner then filed a 60(b)(6) motion citing *Artuz* as an extraordinary circumstance. The Supreme Court rejected his argument. Noting that the circumstances warranting 60(b) relief would "rarely occur in the habeas context," *Gonzalez*, 545 U.S. at 535, the Court opined that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final," *id.* at 536. It was "hardly extraordinary" that the district court's interpretation of AEDPA, which was correct under the Eleventh Circuit's then-governing precedent, was subsequently rejected in a different case. *Id.* at 536.

The Eleventh Circuit, describing *Gonzalez*, has observed that, in that opinion, "the U.S. Supreme Court . . . told us that a change in decisional law is insufficient to create the 'extraordinary circumstance' necessary to invoke Rule 60(b)(6)." *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) (citing *Gonzalez*, 545 U.S. at 535-38). Relying on *Gonzalez*, the Eleventh Circuit in *Arthur*, just as the Fifth Circuit in *Adams*, went on to hold that "the change in the decisional law affected by the *Martinez* rule is not an 'extraordinary circumstance' sufficient to invoke Rule 60(b)(6)." *Id.* The Commonwealth appellees cite the Eleventh Circuit's decision in an effort to persuade us that, in

15

light of *Gonzalez*, we should abandon our case-by-case approach to 60(b)(6) motions.

We are not persuaded. We believe that the Eleventh Circuit extracts too broad a principle from *Gonzalez*, which does not answer the question before us. *Gonzalez* did not say that a new interpretation of the federal habeas statutes—much less, the equitable principles invoked to aid their enforcement—is *always* insufficient to sustain a Rule 60(b)(6) motion. *Gonzalez* merely highlights, in action, the position of both the Supreme Court and this Court that "[i]ntervening developments in the law by themselves *rarely* constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini*, 521 U.S. at 239 (emphasis added); *Morris*, 187 F.3d at 341. And, to be clear, the *Gonzalez* Court examined the individual circumstances of the petitioner's case to see whether relief was appropriate, concluding that relief was not warranted given the petitioner's "lack of diligence in pursuing review [in his own case] of the statute-of-limitations issue" eventually addressed in *Artuz*. *Gonzalez*, 545 U.S. at 537. For that matter, even after categorically pronouncing that *Martinez*'s change in the law could not sustain a 60(b)(6) motion, the Eleventh Circuit in *Arthur* briefly considered (and rejected) "other factors" cited by the movant, including the capital nature of his case, as justification for 60(b)(6) relief in the wake of *Martinez*.[7]

---

[7] At least three other courts of appeals have similarly assessed a variety of factors on a case-by-case basis when deciding whether to grant a habeas petitioner's Rule 60(b)(6) motion based on *Martinez* and *Trevino*. *See Nash v. Hepp*, 740 F.3d 1075, 1078-79 (7th Cir. 2014) (noting that, per *Gonzalez* and prior Seventh Circuit precedent, *Martinez*'s change in law could not justify 60(b)(6) relief, but analyzing the specific circumstances of the petitioner's case, including his lack of diligence and his prior opportunity to raise the defaulted claims); *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750-52 (6th Cir. 2013) (denying 60(b)(6) motion after concluding that *Trevino* did not impart new constitutional rights, *Trevino*'s change of the law was the sole basis for the motion, and its rule arguably did not apply to the petitioner's claims); *Lopez*, 678 F.3d at 1135-37 (applying a

*Arthur*, 739 F.3d at 633.

We, therefore, believe that our case-dependent analysis, fully in line with Rule 60(b)(6)'s equitable moorings, retains vitality post-*Gonzalez*, and we do not adopt a per se rule that a change in decisional law, even in the habeas context, is inadequate, either standing alone or in tandem with other factors, to invoke relief from a final judgment under 60(b)(6). The District Court abused its discretion when it based its decision solely on the reasoning of *Adams* and failed to consider how, if at all, the capital aspect of this case or any other factor highlighted by the parties would figure into its 60(b)(6) analysis. We will remand to give it the opportunity to conduct that equitable evaluation now.

2.      Rule 60(b)(6) Analysis

The grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court. We offer, however, the following thoughts to aid the District Court in its further review of Cox's motion.

First, and importantly, we agree with the District Court that the jurisprudential change rendered by *Martinez*, without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief. To be sure, *Martinez*'s change to the federal rules of procedural default, though "limited," was "remarkable." *Lopez*, 678 F.3d at 1136 (internal quotation marks omitted). *Martinez* sharply altered *Coleman*'s well-settled application of the procedural default bar and altered the law of every circuit. The rule adopted in *Martinez* was also important, crafted, as it was, to ensure that fundamental constitutional claims receive review by at least one court.

Even so, *Martinez* did not announce a new constitutional rule or right for criminal defendants, but rather an equitable rule prescribing and expanding the opportunity for review of their Sixth Amendment claims. *See Martinez*,

non-exhaustive, six-factor test to determine whether to grant 60(b)(6) motion predicated on *Martinez*).

17

132 S. Ct. at 1319; *Arthur*, 739 F.3d at 629; *McGuire*, 738 F.3d at 750-51; *Buenrostro v. United States*, 697 F.3d 1137, 1139-40 (9th Cir. 2012) (published order). A post-judgment change in the law on constitutional grounds is not, perforce, a reason to reopen a final judgment. *See Coltec Indus.*, 280 F.3d at 276 (affirming denial of Rule 60(b)(6) motion even though law on which judgment based declared unconstitutional); *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefits Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Much less does an *equitable* change in procedural law, even one in service of vindicating a constitutional right, demand a grant of 60(b)(6) relief.

We also hasten to point out that the merits of a petitioner's underlying ineffective assistance of counsel claim can affect whether relief based on *Martinez* is warranted. It is appropriate for a district court, when ruling on a Rule 60(b)(6) motion where the merits of the ineffective assistance claim were never considered prior to judgment, to assess the merits of that claim. *See Lasky*, 804 F.2d at 256 n.10. After all, the *Martinez* exception to procedural default applies only where the petitioner demonstrates ineffective assistance by post-conviction counsel, as well as a "substantial" claim of ineffective assistance at trial. *Martinez*, 132 S. Ct. at 1318. When 60(b)(6) is the vehicle through which *Martinez* is to be given effect, the claim may well need be particularly substantial to militate in favor of equitable relief.[8] A court

---

[8] Of course, the procedural default exception announced in *Martinez* applies only in states where ineffective assistance claims, either expressly or as a matter of practicality, could not have been raised on direct appeal. *Trevino*, 133 S. Ct. at 1914-15. In *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), Pennsylvania decided to defer consideration of ineffective assistance of counsel claims to collateral review, making *Martinez* applicable to its criminal procedural system. At the time Cox's direct appeal and PCRA proceeding were being adjudicated by the Pennsylvania courts, however, Pennsylvania required a criminal defendant to raise ineffective assistance claims at the earliest stage of proceedings during which he was no longer represented by the allegedly ineffective lawyer, for example,

the post-trial motions phase or direct appeal. *Id.* at 729; *Commonwealth v. Hubbard*, 372 A.2d 687, 695 & n.6 (Pa. 1977). The District Court determined that, because Cox was represented by the same attorney at trial and on direct appeal to the Superior Court, his PCRA proceeding presented the first opportunity to raise an ineffective assistance of trial counsel claim and *Martinez*, therefore, applied.

The Commonwealth appellees argue that *Martinez* does not apply to pre-*Grant* Pennsylvania and that, in any event, Cox availed himself of the opportunity to raise ineffective assistance claims before the trial court and the Pennsylvania Supreme Court. We do not decide whether, as a general matter, Pennsylvania's pre-*Grant* legal landscape falls within the ambit of the *Martinez* rule. We note simply that appellees have not established why the District Court erred in concluding that, under the pre-*Grant* procedural paradigm, defendants who, like Cox, were represented by the same counsel at trial and on direct appeal did not have a realistic opportunity to raise an ineffective assistance of trial counsel claim until collateral review. Extant Pennsylvania precedent made clear that Cox was not obligated to assert such a claim until trial counsel had been relieved of his representation. Cox was entitled to rely on that guidance, and, therefore, did not have to raise his ineffective assistance claims until PCRA review. *See Trevino*, 133 S. Ct. at 1919-20; *Sutton v. Carpenter*, 745 F.3d 787, 793-94 (6th Cir. 2014).

It is true that trial counsel no longer represented Cox in his petition for allocatur to the Pennsylvania Supreme Court. Given the "unlikely and unpredictable" manner in which allocatur is granted by that court, however, a petition for allocatur had never been seen as the first opportunity to raise a claim of ineffective assistance. *Commonwealth v. Moore*, 805 A.2d 1212, 1223 (Pa. 2002) (Castille, J., concurring in part and dissenting in part). In addition, a party may not present new claims in a petition for allocatur. Pa. R. App. P. 302(a). Cox's trial counsel did not raise claims of his own ineffective assistance before the Superior Court—something he could not do, in any event, *see Commonwealth v. Green*, 709 A.2d 382, 384 (Pa. 1998); *Commonwealth v. Dancer*, 331

19

need not provide a remedy under 60(b)(6) for claims of dubious merit that only weakly establish ineffective assistance by trial or post-conviction counsel.

Furthermore, courts must heed the Supreme Court's observation—whether descriptive or prescriptive—that Rule 60(b)(6) relief in the habeas context, especially based on a change in federal procedural law, will be rare. *Gonzalez*, 545 U.S. at 535-36 & n.9. Principles of finality and comity, as expressed through AEDPA and habeas jurisprudence, dictate that federal courts pay ample respect to states' criminal judgments and weigh against disturbing those judgments via 60(b) motions. In that vein, a district court reviewing a habeas petitioner's 60(b)(6) motion may consider whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago. Considerations of repose and finality become stronger the longer a decision has been settled. *See id.* at 536-37 (cautioning against 60(b)(6) relief in "cases long since final" and "long-ago dismissals"); *id.* at 542 n.4 (Stevens, J., dissenting) ("In cases where significant time has elapsed between a habeas judgment and the relevant change in procedural law, it would be within a district court's discretion to leave such a judgment in repose."). Here, Cox's direct appeal was decided in 1996 and his initial habeas petition, in which his claims were deemed defaulted, was dismissed in 2004, eight years before *Martinez*.

A movant's diligence in pursuing review of his ineffective assistance claims is also an important factor. Where a movant has not exhausted available avenues of review, a court may deny relief under Rule 60(b)(6). *See id.* at 537 (majority opinion); *Lopez*, 678 F.3d at 1136 & n.1; *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 194-95 (3d Cir. 1988).

A special consideration arises in this case, as well. Courts must treat with particular care claims raised in capital cases. *Burger v. Kemp*, 483 U.S. 776, 785 (1987) ("Our duty

A.2d 435, 438 (Pa. 1975)—likely barring Cox from raising those claims in his allocatur petition.

to search for constitutional error with painstaking care is never more exacting than it is in a capital case."). Although Cox did not receive a capital sentence for the murder of Davis, that murder conviction was used as an aggravating factor in arriving at a death sentence in a separate case, albeit one that is still under habeas review. That fact is significant.

Finally, we offer no opinion on the substantiality or lack thereof of Cox's claims or how the District Court should weigh the various factors that may be pertinent to his Rule 60(b)(6) motion. Nor do we intimate that the Court is precluded from reaching the same conclusion on remand following a more comprehensive analysis. We conclude only that, perhaps with additional briefing by the parties, a more explicit consideration of the facts and circumstances relevant to the concededly timely filed underlying motion would have been, and is now, appropriate.

## IV. *CONCLUSION*

We will vacate the order of the District Court denying Cox's Rule 60(b)(6) motion and remand for further proceedings consistent with this Opinion. If, following the proceedings on remand, an appeal is filed, that appeal shall be forwarded to this panel for decision.