**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1918
_____

LAWRENCE GAINES

v.

SUPERINTENDENT BENNER TOWNSHIP SCI;
DISTRICT ATTORNEY NORTHAMPTON COUNTY;
ATTORNEY GENERAL PENNSYLVANIA,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 5-20-cv-00361
District Judge: Honorable Mark A. Kearney
_____

Argued, January 20, 2022

Before: JORDAN, RESTREPO, and SMITH, *Circuit Judges*

(Filed: May 12, 2022)

Katharine R. Kurnas     [**ARGUED**]
Northampton County Office of District Attorney
669 Washington Street
Easton, PA 18042

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103
          *Counsel for Appellants*

Cheryl J. Sturm   [**ARGUED**]
387 Ring Road
Chadds Ford, PA 19317
          *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Lawrence Gaines was convicted in Pennsylvania state court of first-degree murder under 18 PA. CONS. STAT. § 2502. After pursuing direct and collateral proceedings in Pennsylvania, Gaines petitioned for habeas relief pursuant to 28 U.S.C. § 2254. The District Court granted Gaines's

2

petition. That court held that Gaines's trial counsel was ineffective for not objecting to the trial court's omission of a jury instruction that no adverse inference could be drawn from Gaines's election not to testify in his own defense.

We conclude that the District Court erred. Gaines's trial counsel made a reasonable tactical choice when he did not object to the trial court's failure to give the requested no-adverse-inference instruction as part of its charge to the jury. We will, therefore, reverse the District Court's order granting habeas relief and remand for further proceedings.

## I. BACKGROUND

### a. Factual Background

Gaines served as the "muscle" in a house known locally for drug dealing. Early on July 3, 2012, William Thompson, also known as "Poncho," knocked on the door of the house looking to buy drugs. Tony Williams, a visitor in the house, told Thompson that the house was "closed," denied him entry, and told him to leave. But Thompson kept knocking and asking to come in, even after Williams told him to quiet down so that neighbors would not complain to the police.

Eventually, Gaines walked outside to confront Thompson and an argument ensued. Williams joined the two other men and tried to calm them down. Suddenly, "[o]ut of nowhere, [Gaines] hit[] Poncho." App. at 378. Gaines punched Thompson, knocking him to the ground, and he continued to beat Thompson until Williams pulled him away.

3

After Thompson got up from the ground, he began to walk down the street, but then paused to pick up a wooden post. He ran towards Gaines, hitting him across the back with the post. Both men fell, and when Gaines stood up, he grabbed a knife from his pocket. Looking at Thompson, Gaines said something to the effect of "oh, it's like that? Yeah, it's like that." App. at 384. Gaines then stabbed Thompson multiple times. Once again, Williams pulled Gaines off of Thompson.

A forensic expert later testified that Gaines stabbed Thompson five times: twice to the right buttock, once to the right posterior thigh, once to the right bicep, and once to the right groin. The wound to the right groin perforated Thompson's femoral artery, resulting in hemorrhaging that caused his death.

When confronted by the police the next day, Gaines lied by denying he had anything to do with Thompson's death. The detective who interviewed Gaines noted that he did not appear to be injured; Gaines did not seek medical attention after the fight. Roughly a week after this interview, a family who lived near the scene of the fatal confrontation found a knife covered in blood in their backyard. The police took custody of it, and their forensic experts found Thompson's DNA on the knife.

### b. State Court Proceedings

Gaines was charged with first-degree murder pursuant to 18 PA. CONS. STAT. § 2502(a).[1] In Pennsylvania, first-degree murder is "an intentional killing," which is further

---

[1] The Commonwealth did not pursue the death penalty.

4

defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing." *Id.* § 2502(a), (d). In compliance with Pennsylvania Supreme Court precedent, the jury was also instructed on three lesser included offenses: (1) murder in the third degree; (2) voluntary manslaughter; and (3) involuntary manslaughter. *See Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013).

At trial, Gaines's counsel, Robert Sletvold, argued self-defense. Gaines presented no witnesses and chose not to take the witness stand. Upon learning that Gaines would not testify, the trial court conducted a colloquy to ensure that Gaines was knowingly waiving his right to be a witness on his own behalf. During the colloquy, the court inquired of Gaines as follows: "Mr. Sletvold also indicated that he wishes me to instruct the jury that the jury can draw no adverse inference from your decision to remain silent. Do you understand that?" App. at 628. And during the charge conference, Sletvold repeated his request for a no-adverse-inference instruction:

> THE COURT: Mr. Sletvold, you are requesting 3.10(a) [sic], defendant does not have to testify, no adverse inference?
>
> MR. SLETVOLD: Yes.

App. at 680.[2] This exchange also demonstrates that the trial court agreed to give the instruction.

---

[2] Pennsylvania's Model Instruction 3.10A provides:

5

Despite the defense request and the court's agreement to it, the trial judge neglected to include the no-adverse-inference instruction in its jury charge. And when the judge asked counsel if they had any objections, Sletvold did not object to the lack of a no-adverse-inference instruction. The jury convicted Gaines of murder in the first degree. Gaines did not raise any argument that he should have received the no-adverse-inference instruction during either his direct appeal or on collateral review in the Pennsylvania courts.

### c. District Court Proceedings

Gaines, proceeding pro se, raised an ineffective assistance of counsel claim arguing that Sletvold should have requested or objected to the lack of the no-adverse-inference instruction.[3] The District Court conducted an evidentiary hearing on this claim. At that hearing, Sletvold testified he was aware that the trial court failed to give the requested no-adverse-inference instruction, but he explained that he decided

It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt, or any other inference adverse to the defendant, from the fact that he did not testify.

Pennsylvania Suggested Standard Criminal Jury Instructions § 3.10A (3d ed. 2016) (cleaned up).

[3] Gaines raised several other grounds in this petition, but they are not before us in this appeal.

6

not to object because he "was concerned that throwing [the no-adverse-inference instruction] in at the end, so to speak, may have dr[awn] undue attention to the fact that Mr. Gaines did not testify." App. at 137. Further, Sletvold testified that he was otherwise satisfied with the charge as it stood because it placed the burden of proof squarely on the Commonwealth and exhaustively detailed the law of self-defense.

Gaines's counsel on state collateral review, Matthew Deschler, did not raise any claim concerning the lack of a no-adverse-inference instruction. In fact, he testified that he did not even notice the absence of the instruction.

## II.    JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    ANALYSIS

We review the District Court's legal conclusions and any factual inferences drawn from the state court record de novo. *Randolph v. Sec'y Pa. Dep't of Corr.*, 5 F.4th 362, 372 (3d Cir. 2021). When a district court conducts an evidentiary hearing, we review any "new" findings for clear error. *Id.*

Before moving to the merits of Gaines's petition, however, we must determine whether he properly exhausted his claim. Although the Commonwealth did not argue that Gaines failed to exhaust his claim, we have an independent duty to analyze exhaustion unless the Commonwealth

7

explicitly waives that requirement. 28 U.S.C. § 2254(b)(3). Because the Commonwealth has not explicitly waived it here, we consider *sua sponte* if Gaines exhausted his claim. *See Pavatt v. Carpenter*, 928 F.3d 906, 924–25 (10th Cir. 2019).

Because Gaines's claim for ineffective assistance of counsel was raised for the first time in the District Court, we can analyze Gaines's claim only if there is sufficient cause to do so under *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). Sufficient cause exists to review a defaulted claim for ineffective assistance of counsel if the petitioner shows that: (1) "the default was caused by ineffective assistance of post-conviction counsel"; (2) "in the initial-review collateral proceeding"; and (3) "the underlying claim of trial counsel ineffectiveness is substantial." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 376 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014)). A showing of cause under *Martinez* means only that we reach the merits of the underlying claim of ineffective assistance of trial counsel. It does not necessitate a grant of habeas relief. *See id.* at 383. We analyze each *Martinez* factor in turn.

First, post-conviction counsel failed to provide effective assistance by not detecting or raising that Sletvold did not object to the trial court's omission of the no-adverse-inference instruction. At the evidentiary hearing in the District Court, Deschler testified that he did not notice the trial court's failure to give the instruction. While the standards espoused in *Strickland v. Washington*, 466 U.S. 668 (1984), give strategic decisions of counsel a wide berth, inattentiveness is strong

8

evidence of ineffective assistance. *See Preston*, 902 F.3d at 377 (noting that there was no explanation provided as to a failure to raise an argument on appeal); Wayne LaFave et al., 3 CRIM. P. § 11.10(c) (4th ed. 2021) ("Courts will far more readily find incompetency where there has been an abdication—not an exercise—of professional judgment." (internal quotation marks omitted) (quoting *McQueen v. Swenson*, 498 F.2d 207, 216 (8th Cir. 1974))).

Additionally, Deschler's failure to raise this ground is concerning because the trial court's omission of the instruction probably violated Gaines's rights under the Pennsylvania Constitution. A defendant who timely requests a no-adverse-inference instruction is entitled to have it given to the jury. *Commonwealth v. Thompson*, 674 A.2d 217, 220 (Pa. 1996); *cf. Carter v. Kentucky*, 450 U.S. 288, 300 (1981) (holding that a no-adverse-inference instruction is required under the Fifth Amendment if timely requested). Likewise, a Pennsylvania court must also honor a defendant's request not to provide a no-adverse-inference instruction. *Commonwealth v. Edwards*, 637 A.2d 259, 261 (Pa. 1993).[4] But even if the defendant chooses not to request the instruction, the trial court is required to colloquy the defendant to determine if he is knowingly waiving his right to have the instruction given. *Thompson*, 674 A.2d at 222 ("[T]he no adverse inference instruction shall be

---

[4] A federal court does not violate the Constitution by giving the instruction over a defendant's objection. *Lakeside v. Oregon*, 435 U.S. 333, 340–41 (1978).

given absent an *express* on the record colloquy by the defendant waiving the charge.").

The trial court did not perform a colloquy as to whether Gaines wished to waive the charge, and further failed to give the instruction even though it had been timely requested. What's more, the judge had actually agreed to give the no-adverse-inference instruction. Yet post-conviction counsel failed to notice the absence of both the instruction and the colloquy. His inattentiveness meant that there was no tactical decision to make. We, therefore, hold that post-conviction counsel's performance was objectively unreasonable and that he was ineffective under the first *Martinez* prong.[5]

The second *Martinez* prong is also satisfied. Post-conviction counsel's deficient performance occurred in an initial-review collateral proceeding. *See Preston*, 902 F.3d at 377.

Finally, Gaines's claim that Sletvold was ineffective is substantial. A claim is substantial as long as it "has some merit." *Cox*, 757 F.3d at 119 (internal quotation marks omitted) (quoting *Martinez*, 566 U.S. at 14). This standard is "analogous to the substantiality requirement for a certificate of appealability." *Id.* So we ask if "reasonable jurists could debate" whether Sletvold's performance was ineffective. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This is a "light" burden; Gaines "must show only that his claim represents

---

[5] To succeed under *Martinez*, a petitioner does not need to show prejudice. *Preston*, 902 F.3d at 376–77.

10

something more than the absence of frivolity or the existence of mere good faith." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 283 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Miller-El*, 537 U.S. at 338).

Here, we easily conclude that Gaines's claim is not frivolous, and that it deserves further examination. As such, sufficient cause exists under *Martinez* to excuse the failure to exhaust his claim.

With the requirements of *Martinez* having been met, we proceed to assess the merits of Gaines's claim.

To determine if Gaines's right to effective assistance of counsel under the Sixth Amendment was violated, we look to the "two components" described in *Strickland*. 466 U.S. at 687. First, we must determine if trial counsel "made errors so serious that counsel was not functioning as the 'counsel'" guaranteed by the Sixth Amendment. *Id*. at 689. To meet this standard, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, we must ascertain whether such deficient performance prejudiced Gaines. *Id.* at 687. We may proceed through this analysis in any order, and if Gaines makes an inadequate showing as to one of these components, then we do not need to examine the other. *Id.* at 697.

In pursuing our inquiry, we are cognizant that "[j]udicial scrutiny of counsel's performance must be highly deferential." *See id.*; *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013); *see also United States v. McCoy*, 410 F.3d 124, 135 (3d

11

Cir. 2005) ("[C]ourts have been highly deferential to counsel's strategic decisions."). And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that "advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681. In other words, "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006).

Before assessing the quality of Sletvold's representation under *Strickland*, we must correct a substantial factual error made by the District Court in its opinion supporting the grant of habeas relief. The Court concluded that Attorney Sletvold failed to request the no-adverse-inference instruction at the charge conference. The District Judge wrote:

> Attorney Sletvold's strategic decision to not object after the trial court read the full instructions to the jury does not explain why Attorney Sletvold did not object earlier during the charging conference to the omission of the "no adverse inference" instruction.

App. at 65. Surprisingly, the Court repeated that finding when denying the Commonwealth's motion to reconsider the judgment: "Attorney Sletvold's failure to request the 'no adverse inference' instruction at *both the charging conference* and after the trial court instructed the jury . . . constituted ineffectiveness under the performance prong of *Strickland v. Washington*." App. at 23 (emphasis added).

12

The conclusion that Sletvold did not request the instruction at the charge conference was drawn directly from the record and is therefore subject to plenary review. *Randolph*, 5 F.4th at 372. And the record is clear that Sletvold did in fact request the no-adverse-inference instruction at the charge conference. The following "Q and A" between the court and counsel makes that clear:

> THE COURT: Mr. Sletvold, you are requesting 3.10(a) [sic], defendant does not have to testify, no adverse inference?
>
> MR. SLETVOLD: Yes.

App. at 680. The trial court also clearly agreed to give the instruction. Therefore, the District Court erred in finding that Sletvold did not request a no-adverse-inference instruction at the charge conference, or that he somehow failed to object at that time to the trial court's failure to grant such a request.

We are left, then, with one question only: Did Sletvold's strategic decision not to object to the missing no-adverse-inference instruction at the conclusion of the charge to the jury constitute ineffective assistance of counsel?

We begin fully cognizant of the probability that a violation of Pennsylvania law occurred at the trial when no colloquy was conducted regarding the instruction. But even if state law was violated in that regard, it does not entitle Gaines to § 2254 relief. Under § 2254, our review extends only to assertions that federal law has been violated. 28 U.S.C. § 2254(d). Moreover, the fact that some *other law* has been

13

violated does not inexorably lead to the conclusion that counsel was ineffective. *See Gov't of V.I. v. Weatherwax*, 77 F.3d 1425, 1430–31 (3d Cir. 1996). For example, in *Weatherwax* we observed that an attorney may have violated an ethical rule by not objecting when a juror was seen carrying into the jury room a newspaper which contained a story concerning the trial. The attorney did not object, however, because he thought that the composition of the seated jury gave his client the best chance to receive an acquittal. *Id.* at 1428. Additionally, he believed that he could not later obtain a similarly favorable jury if he was required to redo voir dire. *Id.* We held that counsel's failure to bring the potential outside influence on the jury's deliberation to the attention of the court was not ineffective assistance. As we explained, "[i]f counsel breaches a duty *to the court*, this does not necessarily mean that the representation of *his client* was ineffective." *Id.* at 1438.

Here, the trial court may have ignored or overlooked a procedural obligation under Pennsylvania law when it failed to conduct a colloquy. But the issue before us is only whether Sletvold provided constitutionally ineffective assistance of counsel, not whether a rule of state criminal procedure has been violated.

We conclude that Sletvold was not ineffective. To have been ineffective, he would have had to make a decision that fell below an objective standard of reasonableness—but commentators have observed that there is no consensus on the efficacy of the no-adverse-inference instruction. Kenneth S. Brown et al., 1 MCCORMICK ON EVID. § 128 (8th ed. 2021) ("It is widely recognized . . . that reasonable persons differ with

14

regard to when, if ever, such an instruction is likely to do more good than harm."); *see also Lakeside*, 435 U.S. at 335 (noting that counsel viewed the instruction as waving a "red flag" in front of the jury); *id.* at 347 (Stevens, J., dissenting) ("It is unrealistic to assume that instructions on the right to silence always have a benign effect.").[6]  Because there is reasonable disagreement as to the instruction's effectiveness, "[d]efense counsel should have considerable latitude in weighing the effect of such an instruction." *United States v. Perry*, 479 F.3d 885, 891–92 (D.C. Cir. 2007).

And, as we would expect in the face of this reasonable disagreement, our sister circuits have deferred to defense counsel's strategic decisions.  The Eleventh Circuit observed that "[n]either the Supreme Court nor this Court has ever held that a trial court must give a no-adverse-inference instruction if one is not requested. *Nor has either court held that it is ineffective assistance of counsel not to request such an instruction*." *Bester v. Warden*, 836 F.3d 1331, 1337 (11th Cir. 2016) (emphasis added).  Similarly, the Tenth Circuit committed the decision concerning whether or not to request a no-adverse-inference instruction to an "attorney's tactical discretion." *Coleman v. Brown*, 802 F.2d 1227, 1235 (10th Cir. 1986).  In fact, neither the District Court nor Gaines cites a case—and we are aware of none—in which a tactical decision

---

[6] Even the available empirical literature tends to show that the instruction may have little effect on a jury's deliberation. Jeffrey Bellin, *The Silence Penalty*, 103 IOWA L. REV. 395, 434 (2018) (collecting surveys and experiments).

to forgo a request for a no-adverse-inference instruction was held to be an objectively unreasonable decision.

Sletvold testified at the evidentiary hearing that he consciously decided to avoid calling attention to the fact that Gaines chose not to testify. Indeed, he was faced with two options. Make a request that would assure the last thing the jury heard was a reminder that Gaines did not testify (the so called "red flag") or allow the jury to undertake its deliberations without the no-adverse inference instruction, but after hearing a charge which clearly placed the burden of proof on the Commonwealth and exhaustively explained self-defense. This placed counsel in the unenviable position of having to make an on-the-spot decision. But such rapid decision making is frequently required of trial lawyers, and Sletvold chose not to raise the "red flag." Under the circumstances, we can hardly call his decision objectively unreasonable. *See Strickland*, 466 U.S. at 689 (remarking that "[t]here are countless ways to provide effective assistance in any given case," and, as a result, courts should give defense counsel latitude in choosing a trial strategy); *Rolan*, 445 F.3d at 681–82 (reminding reviewing courts to ignore the temptation to second-guess an attorney's trial strategy).

Because Sletvold was not ineffective, we need not determine if the alleged error was prejudicial. So we will reverse the District Court's grant of habeas relief.

Yet there remains one issue for our consideration. During voir dire, the trial court delivered a forceful explanation to the venire of the right against self-incrimination:

16

MR. SLETVOLD: [W]hat we're doing here is not trying to judge you but trying to make sure that the jury that sits here can play by the rules.

Like I said, some of those rules the judge will instruct you. Mr. Gaines is presumed innocent. Mr. Gaines does not have to testify. . . . Does anyone have a problem with that? Number 3.

. . .

JUROR NUMBER 3: Well, on the questionnaire it asked about, and you just brought it up, about him not having to testify. In my way of thinking, if I were –

THE COURT: Stop right there. Let me interrupt, Mr. Sletvold. One of the most fundamental principles of the Pennsylvania [C]onstitution is that when someone is accused of a crime, he does not have to testify; does not have to be called upon to defend themselves. Rather, the burden is on the Commonwealth to prove that they're guilty and that proof must be beyond a reasonable doubt.

That is such a fundamental constitutional principle that it is absolutely imperative as the jury in this matter you can accept that principle and if you have no adverse inference from the decision of the defendant to remain silent. There can be a variety of reasons why a defendant may

17

not choose to take the stand.  But regardless of the reason, you must be able to accept that principle of our law dating back to our founders that the defendant has an absolute right to remain silent.  If you cannot accept that law and if you're likely to infer anything adverse to the defendant, you cannot be a juror in this matter.

App. at 237–39.  To us, this intervention was plainly relevant to Gaines's petition.  Such a robust assertion from the trial judge of the right against self-incrimination may well have affected Sletvold's calculus in deciding whether to object to the trial court's failure to provide the requested no-adverse-inference instruction.  In any event, Sletvold knew the jury had already been advised, early on about this bedrock principle of American law, and before they heard any evidence.  It would have been reasonable for him to think, at the time, that the jury did not require a reminder when it would be tacked on at the end of trial.

Unfortunately, the District Judge did not have the benefit of the voir dire transcript when it was asked to rule on Gaines's habeas petition.  Additionally, no Pennsylvania court had the opportunity to examine the voir dire transcript.  That is because it was not produced until *after* the District Court granted habeas relief.

We decline to consider the transcript at this late stage.  Nor do we need to decide if the District Court abused its discretion in denying the motion to reconsider.  Even without considering the excerpt of the transcript set forth above, we confidently hold that Sletvold's representation of Gaines was

18

not ineffective.  Yet we lack a reasonable explanation for why neither the Commonwealth nor the petitioner thought to inquire into the existence of a voir dire transcript despite its obvious absence from the record.  That counsel and courts would need a *complete* transcript for use in post-trial proceedings following a first-degree murder conviction seems beyond question.

We use this opportunity, then, to remind all parties to habeas proceedings that they have an obligation, both in federal court and in the Pennsylvania courts, to develop, pursue, and present to us on a timely basis a full, complete, and accurate record of all that transpired before the trial court.  *See* Rules Governing § 2254 Cases, Rule 5(c), 28 U.S.C. foll. § 2254; PA. R.A.P. 1921.  Adherence to that obligation assures that a habeas court has before it all that is needed to conduct meaningful collateral review.

## IV.    CONCLUSION

Sletvold made a tactical decision to not object to the trial court's omission of a no-adverse-inference instruction.  His decision, viewed through the deferential lens of *Strickland*, was reasonable.  Therefore, Gaines was not deprived of his right to effective assistance of counsel.  We will reverse the order granting habeas relief and remand for the District Court to deny Gaines's habeas petition.