**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1403

_____

ROY MOSES,

Appellant

v.

DISTRICT ATTORNEY PHILADELPHIA;
SUPERINTENDENT PHOENIX SCI

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:21-cv-05466)
District Judge: Honorable Joseph F. Leeson, Jr.

_____

Argued on November 13, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and
AMBRO, *Circuit Judges*

(Opinion filed: April 2, 2025)

Abigail T. Burton [**ARGUED**]
Bruce P. Merenstein
WELSH & RECKER
306 Walnut Street
Philadelphia, PA 19106

      *Counsel for Appellant Roy Moses*

Katherine E. Ernst
David Napiorski [**ARGUED**]
PHILADELPHIA COUNTY OFFICE OF DISTRICT ATTORNEY
3 S Penn Square
Philadelphia, PA 19107

      *Counsel for Appellees District Attorney*
      *Philadelphia and Superintendent Phoenix SCI*

_____

OPINION OF THE COURT

_____

AMBRO, *Circuit Judge*

When a prisoner has a substantial claim that his trial counsel was constitutionally deficient and his postconviction counsel's own deficiency causes him to default on that claim, equity allows us to hear it anyway. Truer still when the prisoner's postconviction counsel abandons him midstream, forcing him to carry on pro se.

After a Philadelphia jury convicted Roy Moses of violating state drug laws, he obtained a new lawyer and collaterally attacked his conviction in Pennsylvania state court. Before that proceeding concluded, however, his lawyer disappeared. Moses tried to press ahead without counsel, but the court

2

ultimately dismissed his petition. He next moved to federal court, where he petitioned for a writ of habeas corpus, arguing that his trial lawyer violated his Sixth Amendment right to counsel by neglecting to make certain sentencing arguments. Though Moses failed to bring that claim in his state postconviction proceeding, he argued that his postconviction lawyer's ineffectiveness caused that failure, so his default was excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). The District Court dismissed his petition. In its view, Moses could not invoke *Martinez* because he chose to forge ahead pro se in the state postconviction proceeding. His choice to do so, coupled with the failure to raise his trial-counsel ineffectiveness claim, had barred him from relying on *Martinez*.

Before us are three questions. First, does the *Martinez* framework apply when a prisoner proceeds pro se after his postconviction counsel abandons him? Second, if so, was Moses's procedural default excused under *Martinez*? And third, if it was, is Moses entitled to relief on the merits of his trial-counsel ineffectiveness claim? The answer to each question is yes, so we reverse the District Court's dismissal of Moses's petition and remand with instructions to grant a writ of habeas corpus limited to resentencing.

## I. BACKGROUND

### A. The 2015 Trial: Court of Common Pleas, Philadelphia County

Moses was convicted of various drug crimes in the Philadelphia Court of Common Pleas. To determine his sentence, the court consulted Pennsylvania's sentencing guidelines. Those guidelines weigh two main inputs. The first is the Offense Gravity Score, which gauges the severity of the defendant's offense. 204 Pa. Code § 303.3. The second is the Prior

3

Record Score, which represents the seriousness of the defendant's prior convictions. *Id.* § 303.4. The two combine to determine a recommended penalty on Pennsylvania's Sentencing Matrix. *See id.* § 303.16(a). The table below illustrates the Sentencing Matrix's layout:

| OGS | Prior Record Score | | | | | | | | AGG/MIT |
| | 0 | 1 | 2 | 3 | 4 | 5 | RFEL | REVOC | |
|---|---|---|---|---|---|---|---|---|---|
| 14 | 72-SL | 84-SL | 96-SL | 120-SL | 168-SL | 192-SL | 204-SL | SL | ~/-12 |
| 13 | 60-78 | 66-84 | 72-90 | 78-96 | 84-102 | 96-114 | 108-126 | 240 | +/- 12 |
| 12 | 48-66 | 54-72 | 60-78 | 66-84 | 72-90 | 84-102 | 96-114 | 120 | +/- 12 |
| 11 | 36-54 | 42-60 | 48-66 | 54-72 | 60-78 | 72-90 | 84-102 | 120 | +/- 12 |

*Id.* For each combination of Offense Gravity Score and Prior Record Score, the Sentencing Matrix recommends a range from which the trial court will select a minimum term of confinement. *Id.* § 303.9(e). The final sentence will include a minimum and a maximum term of confinement. 42 Pa. Cons. Stat. § 9756(b). The minimum term may not exceed one-half of the maximum term. *Id.*

There are eight Prior Record Score categories. The first six are numbered 0 through 5 and are based on points assessed for prior convictions. The last two are RFEL (short for **R**epeat **Fel**ony 1 and Felony 2 Offender Category) and REVOC (short for **Re**peat **V**iolent **O**ffender **C**ategory). Unlike the first six categories, these two are career-offender classifications and rest on more than points alone. 204 Pa. Code § 303.4. For example, the RFEL category applies to "[o]ffenders who have previous convictions or adjudications for *Felony 1 and/or Felony 2 offenses* which total 6 or more points in the prior record." *Id.*

4

§ 303.4(a)(2) (emphasis added). Other kinds of convictions—like those for third-degree felonies—do not count.

The trial court assigned Moses's drug conviction an Offense Gravity Score of 11. As for his Prior Record Score, the Commonwealth and Moses's trial counsel both agreed that he fell within the RFEL category. The trial court thought so too. It counted four points from Moses's 1998 Pennsylvania conviction for first-degree robbery and then two more from his 2003 federal conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). In assessing the latter offense, the trial court treated § 922(g)(1) as equivalent to Pennsylvania's felon-in-possession law, 18 Pa. Cons. Stat. § 6105—a second-degree felony—because it determined that the elements of the two statutes were substantially identical. *See* 204 Pa. Code § 303.8(f)(1). Four points from first-degree robbery plus two points from second-degree unlawful possession of a firearm yields six points from qualifying offenses.

For an Offense Gravity Score of 11 and a Prior Record Score of RFEL, the guidelines recommended a minimum sentence of between 84 and 102 months, plus or minus 12 months. *Id.* § 303.16(a). Moses's trial counsel requested a below-guidelines sentence of 60 to 120 months. The Commonwealth, by contrast, asked for a statutory maximum sentence of 90 to 180 months. *See* 35 Pa. Cons. Stat. §§ 780-113(a)(30) (criminalizing possession with intent to deliver controlled substances), (f)(1) (imposing 15-year maximum sentence for violations of § 780-113(a)(30)).

After hearing argument from counsel, the trial court issued Moses's sentence. It began by chastising him for committing another federal firearms offense while he had been out on bail. The trial court described Moses as a "career criminal" whose "appalling" behavior had resulted in multiple

5

convictions. App. 117. It did "not think" that he could be "subject to rehabilitation based upon [his] record," and "fear[ed] that[,] when [he got] back out," he would "be doing the same things [he] did before [he was] incarcerated." App. 117. Yet despite those concerns, the court sentenced Moses to 72 to 144 months' imprisonment. That sentence included a one-year credit for time served on the federal firearms conviction because his attorney never moved to revoke his state bail so he could begin accruing time in the state system.

Moses challenged his conviction and sentence on direct appeal. The Pennsylvania Superior Court affirmed both, and the Pennsylvania Supreme Court denied his request for permission to appeal further.

**B.    The 2018 Postconviction Proceedings: Post Conviction Relief Act Court**

Moses, without counsel, collaterally attacked his conviction under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, *et seq.* (PCRA). The PCRA court appointed him a lawyer, who filed an amended petition raising trial-counsel ineffectiveness claims. Finding no merit in those claims, the PCRA court issued a notice of intent to dismiss the petition under Pennsylvania Rule of Criminal Procedure 907. Though Moses still had PCRA counsel at that point, that counsel never responded to the Rule 907 notice, effectively abandoning him. So Moses responded himself. The PCRA court dismissed his petition without a hearing anyway. He appealed and the Pennsylvania Superior Court affirmed the PCRA court's dismissal.

## C. The 2021 Habeas Petition: Eastern District of Pennsylvania

Moses next petitioned for a writ of habeas corpus in the U.S. District Court for the Eastern District of Pennsylvania. There, he asserted for the first time that his trial counsel was constitutionally deficient for failing to challenge his Prior Record Score. The Commonwealth argued that Moses had procedurally defaulted on that claim because he had never raised it before the PCRA court. Moses for his part invoked the Supreme Court's decision in *Martinez v. Ryan*, which holds that a postconviction counsel's constitutionally deficient assistance can excuse a prisoner's procedural default of his ineffective-assistance-of-trial-counsel claim. The Commonwealth responded that *Martinez* did not apply because Moses's underlying claim lacked merit, and thus his postconviction counsel's failure to raise it did not amount to ineffective assistance.

The District Court referred the case to a magistrate judge, who issued a report and recommendation concluding that *Martinez* did not apply. The magistrate judge reached that conclusion not because she thought, as the Commonwealth did, that Moses's underlying claim lacked merit, but because Moses failed to raise the claim himself in his pro se filing to the PCRA court. Over Moses's objections, the District Court adopted the magistrate judge's report and recommendation in full. It agreed that Moses could not invoke *Martinez* because he "failed to raise the [trial-counsel ineffectiveness] claims in his pro se objections to the [PCRA court's] Rule 907 notice." App. 25. The District Court declined to issue a certificate of appealability and denied Moses's motion to amend the judgment.

We, however, granted Moses a certificate of appealability on two issues: whether *Martinez* should apply to excuse his

7

procedural default and, if so, whether he is entitled to relief on the merits.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Moses's petition for a writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253. We give fresh review to a district court's dismissal of a habeas petition when the court, as here, did not hold an evidentiary hearing. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016) (en banc).

## III.     DISCUSSION

We need to drill through three layers of habeas law: (1) does *Martinez* apply here at all? If so, (2) does it excuse the procedural default Moses claims his PCRA counsel caused and allow us to consider his trial-counsel ineffectiveness claim? And if it does, (3) is Moses entitled to relief?

### A.     *Martinez* **Applies Even Though Moses Could Have Raised His Trial-Counsel Ineffectiveness Claim in His Pro Se Filing.**

Before a state prisoner can seek federal habeas relief, he must exhaust his available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), "thereby affording those courts 'the first opportunity to address and correct alleged violations of the prisoner's federal rights,'" *Walker v. Martin*, 562 U.S. 307, 315–16 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)) (brackets omitted). When "a claim has not been fairly presented to the state courts[,] but further state-court review is clearly foreclosed under state law," we excuse exhaustion "on the ground of futility." *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). "Under those circumstances, the claim is

8

procedurally defaulted, not unexhausted ….” *Id.* “Ordinarily, this procedural default would constitute an independent and adequate state law ground” supporting the judgment and thus “would bar our review.” *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014). A state prisoner may still “obtain federal review of a procedurally defaulted claim, however, if he demonstrates cause for the default and prejudice arising from the violation of federal law.” *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

Moses no doubt procedurally defaulted on his trial-court ineffectiveness claim by failing to raise it in his initial-review collateral proceeding. By the time he petitioned for federal habeas relief, he was time-barred from raising his claim in Pennsylvania state courts.[1] *See* 42 Pa. Cons. Stat. § 9545(b). So is there a sufficient basis for excusing the procedural default?

---

[1] The District Court held not only that Moses had procedurally defaulted by failing to raise his trial-counsel ineffectiveness claim in his pro se filing to the PCRA court; it also held that he never exhausted his state-court remedies in the first place. In our certificate of appealability, we assumed that Moses had procedurally defaulted, and thus had exhausted his state-court remedies. We were right to do so. The exhaustion requirement “refers only to remedies still available *at the time of the federal petition*,” and is “satisfied if it is clear that [the habeas petitioner’s] claims are now procedurally barred under [state] law.” *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (citations and internal quotation marks omitted) (brackets in original) (emphasis added). The District Court concluded that Moses had not exhausted his state-court remedies because Pennsylvania case law left open the theoretical possibility that he had not waived his trial-counsel ineffectiveness claim in the PCRA court. Whatever Pennsylvania’s waiver law might be, it is

9

Enter *Martinez v. Ryan*. There, the Supreme Court answered a question left open by its earlier decision in *Coleman v. Thompson*: "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 566 U.S. at 9 (discussing 501 U.S. 722 (1991)). It concluded that the answer was yes, on "equitable" grounds, *id.* at 13, to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel," *id.* at 9. If a habeas petitioner's *trial counsel* was unconstitutionally deficient, and his *postconviction counsel* was ineffective in failing to raise that claim at the first opportunity in postconviction proceedings, then no state court would ever hear the petitioner's ineffective-trial-counsel claim. *Id.* at 14. Two wrongs call for a right.

We have never addressed the effect of a pro se postconviction filing under *Martinez*. *See Marsalis v. Pa. Dep't of Corr.*, 37 F.4th 885, 889 (3d Cir. 2022) ("[N]either the Supreme Court nor this Court has decided whether we should excuse a default when a state appoints habeas counsel but the prisoner then fires him and proceeds without a lawyer. That important question merits attention in an appropriate case, but not here."). Both Moses and the Commonwealth agree that pro se postconviction filings do not affect a prisoner's entitlement to invoke *Martinez* and ask us to provide clarity. We agree with the parties and now hold that a prisoner who proceeds pro se in an initial-review collateral proceeding—at least when his lawyer

---

beside the point. By the time Moses petitioned for habeas relief in *federal* court, the statute of limitations to seek further PCRA relief had long expired. *See* 42 Pa. Cons. Stat. § 9545(b)(1) (PCRA petitions "shall be filed within one year of the date the judgment becomes final").

abandons him—may invoke *Martinez* to excuse his procedural default.

This principle flows naturally from *Martinez*'s core rule: that habeas petitioners must have at least one *meaningful* opportunity to present their "meritorious ineffective-assistance-of-[trial]-counsel claims." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 762 (3d Cir. 2018). The rule adopted by the District Court, by contrast, collides head-on with *Martinez*, which focuses the inquiry on whether *counsel*, not the *prisoner*, raised the trial-counsel ineffectiveness claim in the initial collateral proceeding. The prisoner, after all, is likely to be "unlearned in the law," and so "may not comply with the [s]tate's procedural rules or may misapprehend the substantive details of federal constitutional law." *Martinez*, 566 U.S. at 12. "To present a claim of ineffective assistance at trial … , a prisoner likely needs an effective attorney." *Id.*

The District Court should have allowed Moses to invoke *Martinez*. The Commonwealth put it best: we would advance neither justice nor *Martinez*'s point by "creat[ing] a new exception for cases where petitioners proceeded pro se after their court-appointed post-conviction counsel [was] arguably ineffective and then abandoned them." Appellees' Br. 15 (italics omitted).

**B.    Moses's Procedural Default Was Excused Under *Martinez*.**

We now know that *Martinez* can apply to excuse Moses's procedural default. So does it? *Martinez* imposes "three conditions" to excuse a procedural default. *Cox*, 757 F.3d at 119. First, the postconviction counsel's ineffective assistance (or the absence of counsel) must have caused the default. *Id.* Second, the petitioner must have defaulted in the "initial-

11

review collateral proceeding"—that is, "the first collateral proceeding in which the claim could be heard." *Id.* And third, "the underlying claim of trial counsel ineffectiveness [must be] 'substantial,' meaning 'the claim has some merit.'" *Id.* (quoting *Martinez*, 566 U.S. at 14).

There is no dispute that the default here occurred at the initial-review collateral proceeding, satisfying the second condition. That leaves the first and third. We conclude that both are satisfied—Moses's trial-counsel ineffectiveness claim is substantial, and his procedural default was caused by his post-conviction counsel's ineffectiveness.

### 1. Moses's Trial-Counsel Ineffectiveness Claim Is Substantial.

Whether an ineffectivessness claim is "substantial" is "analogous to the substantiality requirement for a certificate of appealability": can reasonable jurists debate whether trial counsel's performance was ineffective? *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 711 (3d Cir. 2022) (quoting *Cox*, 757 F.3d at 119). The well-trodden framework for ineffective assistance of counsel asks (1) whether the counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and if so, (2) whether the petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Moses satisfies both prongs.

### a. Moses's trial counsel's performance was deficient.

Moses's merits claim goes like this: his federal § 922(g)(1) conviction was improperly counted as a two-point *second*-degree felony offense under the Pennsylvania sentencing guidelines, and his counsel failed to object. There is at least

12

a reasonable probability that he received a higher sentence than he would have if the trial court had properly characterized that conviction as involving a *third*-degree felony.

We agree. Counsel's performance is deficient when he or she fails to cite existing case law casting doubt on a trial court's decision to apply a sentencing enhancement. *See United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007) ("Where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." (quoting *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004))). Just so here. Existing case law strongly suggested that Moses's § 922(g)(1) conviction was not a predicate offense—that is, the kind of offense that would contribute toward an RFEL designation under Pennsylvania's sentencing guidelines—and thus that the sentencing enhancement he received was unwarranted.

### i. Section 922(g)(1) is not equivalent to Pennsylvania's felon-in-possession law.

In Pennsylvania, "[a]n out-of-state, federal or foreign conviction … is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa. Code § 303.8(f)(1). "[W]hen determining the Pennsylvania equivalent statute for a prior, out-of-state conviction for prior record score purposes, courts must identify the elements of the foreign conviction and[,] on that basis alone, identify the Pennsylvania statute that is substantially identical in nature and definition to the out-of-state offense." *Commonwealth v. Spenny*, 128 A.3d 234, 250 (Pa. Super. Ct. 2015) (internal quotation marks omitted).

In calculating Moses's Prior Record Score, the Pennsylvania probation office and the trial court treated his § 922(g)(1) conviction as equivalent to one under 18 Pa. Cons. Stat.

13

§ 6105—the Commonwealth's felon-in-possession law. But those two statutes are not "substantially identical in nature and definition" because they have different elements. *Id.* Section 922(g)(1) bars firearm possession by anyone convicted of "a crime punishable by imprisonment for a term exceeding one year." Section 6105, by contrast, prohibits possession by "[a] person who has been convicted of an offense enumerated in [§ 6105(b)]," which lists specific offenses, like robbery, assault, and kidnapping.

Indeed, the Pennsylvania Supreme Court has said that § 6105 and § 922(g)(1) "differ in a highly relevant way"—the status element for the former is a fixed list of crimes, but for the latter it is any crime punishable by more than one year's imprisonment. *Commonwealth v. Jemison*, 98 A.3d 1254, 1260–61 (Pa. 2014). And if that were not enough, *Jemison* states outright that "there is no question that the relevant specific enumerated offense is an *essential element* of" a conviction under § 6105. *Id.* at 1261 (emphasis added).

The Commonwealth resists the effect of *Jemison*. It points us instead to *Commonwealth v. Keiper*, an intermediate court decision predating *Jemison* that stated "a prior conviction is not an element of the offense under [§] 6105 but is merely a precondition to charging the accused with a violation of that section." 887 A.2d 317, 318 (Pa. Super. Ct. 2005). The Commonwealth notes that several intermediate court decisions following *Jemison* have concluded that *Keiper*'s characterization of § 6105(b) remains good law, at least for sentencing purposes, because *Jemison* was not itself a sentencing case. *See, e.g.*, *Commonwealth v. Patterson*, 304 A.3d 782, 782 n.5 (Table) (Pa. Super. Ct. 2023) ("The Pennsylvania Supreme Court did not address sentencing in its decision or categorize the prior offense as an element of [§] 6105 for sentencing purposes and,

14

therefore, as other panels of this Court have held, *Jamison* [*sic*] is not relevant to this sentencing issue.").

We are bound to "follow state law as announced by the highest state court." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (internal quotation marks omitted). When a state supreme court has not squarely addressed an issue, we look to "all relevant sources of that state's law in order to isolate those factors that would inform its decision." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980). A considered state appellate decision is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Sheridan*, 609 F.3d at 254 (quoting *Budget Rent–A–Car Sys., Inc. v. Chappell*, 407 F.3d 166, 174 (3d Cir. 2005)). The ultimate inquiry, though, is what we believe the Pennsylvania Supreme Court would do, and so "state intermediate appellate court precedents can be considered erroneous in a sense in which a state's highest court decisions cannot." 19 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4507 (2016).

The Commonwealth asks us to follow *Keiper* and characterize the predicate convictions in § 6105(b) as "precondition[s]," not elements. Appellees' Br. 22. It asks us to do so despite the Pennsylvania Supreme Court's later holding that "there is no question that the relevant specific enumerated offense is an essential element of that crime." *Jemison*, 98 A.3d at 1261. True, the Superior Court has since stated its view that *Jemison* is distinguishable because it did not involve sentencing. *See Patterson*, 304 A.3d at 782 n.5. But in law, as in life, sometimes the most straightforward interpretation is the right one. If there is a distinction between a precondition and an

15

element, it eludes us—the Commonwealth offers no cogent answer, and we cannot find one. We do not believe that the Pennsylvania Supreme Court would say, if confronted with the issue, that § 6105(b) is an element of the crime for purposes of conviction, but not for sentencing.

The Commonwealth's fallback argument is that even if the two statutes have dissimilar elements, Moses's guidelines calculation was still correct because both § 922(g)(1) and § 6105(b) capture Moses's predicate offense—robbery. It directs us to the Pennsylvania Superior Court's decision in *Spenny*, which in the Commonwealth's view holds that "the facts underlying an offense are not 'wholly irrelevant' and 'may need to be considered for grading purposes' when searching for the Pennsylvania equivalent of an out-of-state conviction." Appellees' Br. 23 (quoting 128 A.3d at 250). But the Commonwealth distorts *Spenny*. The court there noted that "the underlying record of the foreign offense may need to be considered for grading purposes," but *only after* "the court conducts an analysis of the elements of the foreign offense and finds the Pennsylvania offense that 'is substantially identical in nature and definition' to the out-of-state statute." *Spenny*, 128 A.3d at 250 (quoting *Commonwealth v. Bolden*, 532 A.2d 1172, 1176 (Pa. 1987)). It did not say that we may look at the facts of the underlying offense instead of its elements to determine whether the statutes are substantially identical.

### ii. Moses's trial counsel was ineffective for failing to object to the characterization of § 922(g) as equivalent to § 6105.

Failing to raise obvious and potentially successful sentencing arguments is not a strategic choice for counsel—it is deficient performance. *See United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000) (finding ineffective assistance of

16

counsel when there was "simply no rational basis to believe that counsel's failure to argue [an] issue on appeal was a strategic choice"). Constitutionally effective assistance seldom requires counsel to make ingenious or pathbreaking arguments. It does, however, require counsel to "make reasonable investigations of the law" and to "cite favorable decisions." *Otero*, 502 F.3d at 336. That includes arguments supported by "readily available" cases like those from the state's highest court. *Jansen*, 369 F.3d at 244. Because Moses's trial counsel did not cite favorable and readily available case law bearing on the calculation of Moses's sentencing guidelines range, his performance was deficient.

### b. Moses was prejudiced by his trial counsel's deficient performance.

A defendant is prejudiced if, but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This is not a "stringent" test. *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999). In the sentencing context, "[t]he prejudice prong is satisfied 'when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing.'" *Otero*, 502 F.3d at 337 (quoting *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000)).

### i. Had trial counsel objected, there is a reasonable probability that Moses's Prior Record Score would have changed from RFEL to 5.

When a federal offense lacks a Pennsylvania equivalent, a sentencing court must "determine the current equivalent

Pennsylvania grade of the offense based on the maximum sentence permitted, and then apply § 303.8(d)(2)." 204 Pa. Code § 303.8(f)(3). Section 303.8(d)(2), in turn, instructs that "[w]hen a prior conviction … was for a felony, but the grade of the felony is unknown, it shall be treated as a Felony 3."

"In Pennsylvania, a person convicted of a felony may be sentenced to a term of imprisonment of no more than twenty years for an F1 [first-degree felony], ten years for an F2 [second-degree felony], and seven years for an F3 [third-degree felony]." *Spenny*, 128 A.3d at 254 (citing 18 Pa. Cons. Stat. § 1103). But a § 922(g)(1) conviction can carry various maximum sentences that bear on its felony classification. At the time of Moses's sentencing, the maximum sentence for a § 922(g)(1) conviction was ten years. 18 U.S.C. § 924(a)(2) (2015). That would be a second-degree felony in the Pennsylvania system. But under the enhancements in § 924(e)(1), a person convicted of three or more certain drug or violent offenses faced a higher mandatory minimum sentence of 15 years. That would be a first-degree felony. "[T]he grade of the prior [§ 922(g)(1)] conviction is unknown" because the potential maximum sentences varies, so we must treat that conviction as a third-degree felony. *See Spenny*, 128 A.3d at 242; *see also id.* at 254 (Arizona criminal statute imposing ten-year maximum sentence but permitting twelve-and-a-half-year maximum sentence when aggravating factors applied was a third-degree felony because its grade under Pennsylvania law was unknown).

Third-degree felony offenses do not count toward an RFEL designation and contribute only one point toward the Prior Record Score. 204 Pa. Code §§ 303.4(a)(2), 303.7(a)(4). If Moses's § 922(g)(1) conviction were characterized as a third-degree felony, the one point toward his Prior Record

Score would give him five points in total—not enough to trigger an RFEL designation. For an Offense Gravity Score of 11 and Prior Record Score of 5, the guidelines recommend a minimum sentence of between 72 and 90 months—12 months lower at both ends than the 84–102-month range applied by the trial court.

There is a reasonable probability that the trial court would have correctly reassessed the points for Moses's § 922(g)(1) conviction had his trial counsel pointed out the mismatch between § 922(g)(1) and § 6105. And had it done so, it would have assessed Moses just one point, not two, dropping him out of the RFEL category. *See* 204 Pa. Code § 303.4.

ii. **There is a reasonable probability that Moses would have received a lower sentence had his guidelines range been between 72 and 90 months.**

The trial court, against a guidelines range of between 84 and 102 months, credited Moses one year of time for state bail that should have been revoked, then sentenced him to 72 to 144 months' imprisonment. The one year of credit came off the bottom of the guidelines range (84 minus 12 equals 72), not the statutory maximum sentence (180 months minus 12 equals 168, not 144). That move strongly suggests that the trial court anchored its sentence at the bottom of the range, 84 months; deducted 12 months; arrived at 72 months as a minimum sentence; then doubled it to 144.

This is enough to show prejudice. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the

19

error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). The record here reflects a reasonable probability that the incorrect guidelines range anchored the trial court's sentence.

The Commonwealth contends that even if the trial court had miscalculated Moses's guidelines range, he would not have suffered prejudice because the court "suggested" that "he would have gotten near the maximum." Appellees' Br. 26 (citing App. 117). But this case is a world away from the "exceedingly rare instances" in which we have held an error in the sentencing guidelines calculation did not prejudice a defendant. *United States v. Hester*, 910 F.3d 78, 91 (3d Cir. 2018). Even an "explicit statement that the district court would have imposed the same sentence under two different ranges" will not insulate a sentence from challenge in the mine-run of cases. *United States v. Zabielski*, 711 F.3d 381, 389 (3d Cir. 2013); *see also id.* at 387 (it is "the rare case" in which it would be "possible to discern from the record that the sentencing Guidelines range did not affect the actual sentence"); *United States v. Raia*, 993 F.3d 185, 196 (3d Cir. 2021) ("[A]n explicit statement that the same sentence would be imposed under a different Guidelines range is insufficient if that alternative sentence is not also a product of the entire [mandatory] sentencing process."); *United States v. Smalley*, 517 F.3d 208, 212 (3d Cir. 2008) (district court's statement that "it would have given the same sentence … if it had applied" the proper enhancement did not render error harmless when the court did not identify the alternative range or explain its deviation from that range).

In any event, given the strong indications that the trial court anchored Moses's penalty at the minimum end of the range, there is more than a reasonable probability that his sentence would have been different had the trial court correctly

calculated the range. Because "any amount of actual jail time has Sixth Amendment significance," *Glover v. United States*, 531 U.S. 198, 203 (2001), Moses has shown prejudice from his trial counsel's deficient performance.

### 2. Moses's PCRA Counsel Was Also Unconstitutionally Deficient for Failing to Bring the Trial-Counsel Ineffectiveness Claim.

Determining whether Moses's PCRA counsel was deficient for failing to raise the trial-counsel ineffectiveness claim detailed above "requires the same showing as the first prong of *Strickland*"—deficient performance.[2] *Richardson*, 905 F.3d at 762. In this case, that is straightforward.

We have excused procedural default under *Martinez* when postconviction counsel missed a "substantial, obvious issue" related to sentencing. *Id.* at 763. As we have explained, Moses's trial-counsel ineffectiveness claim is just that kind of issue. We can "think of no strategic reason why" Moses's PCRA counsel would have forgone his ineffective-assistance-of-trial-counsel claim, and the Commonwealth offers no "viable explanation for such a glaring omission." *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 244 (3d Cir. 2017). Its only explanation rises and falls with its merits arguments that the Prior Record Score was properly calculated and that any error would not have affected Moses's sentence anyway. But given our conclusion that his sentencing-calculation arguments were substantial—indeed, meritorious—this explanation will not do. Because Moses's default was caused by his PCRA

---

[2] "A showing of prejudice is also required, but that occurs at *Cox*'s third prong"—whether Moses's underlying merits claim is substantial. *Richardson*, 905 F.3d at 762 (citing 757 F.3d at 119). As we explained above, it is. *See supra* Section III.B.1.

counsel's unconstitutionally ineffective assistance, we may excuse the default under *Martinez*.

### C. Moses's Trial-Counsel Ineffectiveness Claim Succeeds on the Merits.

Because Moses has shown cause and prejudice to overcome his procedural default under *Martinez*, we next consider the merits of his underlying trial-counsel ineffectiveness claim. Given what we have already said, resolving the merits requires little additional discussion. For the same reason Moses's ineffective-assistance-of-counsel claim is substantial under *Martinez*, he is able to carry his burden of showing that his trial counsel's assistance was unconstitutionally ineffective: he had an obviously powerful argument, his lawyer did not make it, and he was prejudiced as a result. *See supra* Section III.B.1.

## IV. CONCLUSION

When a prisoner procedurally defaults on a substantial trial-counsel ineffectiveness claim because his postconviction counsel errs, we may excuse that default "as an equitable matter." *Martinez*, 566 U.S. at 14. We can do so because an "initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not [be] sufficient to ensure that" a prisoner deprived of his Sixth Amendment rights at trial receives proper consideration for his claim. *Id.* Excluding from this equitable rule prisoners whose lawyers abandon them is inconsistent with *Martinez*.

The District Court here should have applied *Martinez* to determine whether Moses's PCRA counsel's ineffectiveness caused him to default on a substantial trial-counsel ineffectiveness claim. We believe that the answer was yes and that Moses was deprived of his Sixth Amendment right to competent trial

counsel. So we reverse the District Court's judgment and remand with instructions to grant Moses's petition for a writ of habeas corpus limited to resentencing.